## FLOYD *vs.* MORROW.

1. When an execution, either from a court of record, or from a justice's court, is levied by a sheriff or constable on mortgaged property, the mortgagee, or his assignee, may interpose a claim and try the right of property (Code, § 2595) before the law-day of the mortgage.

2. On trial of the right of property between plaintiff in execution against the mortgagor and the mortgagee as claimant, it is error to exclude the claimant's mortgage from the jury, if it is not void on its face.

3. A mortgage conveying, among other personal property, " the hire" of certain slaves, " or the use of them the present year, and whatever negroes I (mortgagor) may hire next year to make a crop with, and the entire crop I may make this year and next," is not void on its face.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. NAT. COOK.

TRIAL OF THE RIGHT OF PROPERTY in a yoke of oxen, between William C. Morrow, plaintiff in execution, and Jordan R. Floyd, claimant. The plaintiff's execution was issued on a judgment for $41 17, which he had obtained against one James W. Ritchie, and was levied by a constable on the property in controversy on the 9th August, 1854. The claimant having executed the statutory bond, a trial was had before a justice of the peace and a jury of seven men, which resulted in a verdict and judgment for the claimant; from which judgment the plaintiff appealed to the Circuit Court. On the trial in the Circuit Court, " the plaintiff proved a levy made upon certain property in the possession of James W. Ritchie, and established its value, and then paused ;" and the claimant then offered in evidence a mortgage, dated May 18, 1854, together with the clerk's endorsement showing that it was proved and recorded on 3d June, by which the said James W. Ritchie conveyed to him certain articles of personal property, which are thus described in the deed : " Four yokes of steers, two mules, two sorrel mares, one sorrel three-year old colt, twenty-five head of cattle, thirty head of hogs, two wagons, one set of blacksmith's tools, household and kitchen furniture, and plantation tools, and the hire of Bill, Beck, Nathan, Lucy, and Henry, or the use of them the present year, and whatever

23

negroes I may hire next year to make a crop with, and the entire crop I may make this year and next." The condition of this mortgage is, "that if the said Ritchie shall and does well and truly pay, or cause to be paid, unto the said Floyd, or his certain attorney, the full sum of $787, ($534 80 due the first of January next, and $252 20, due the first of January, 1856,) together with any debt the said Ritchie may contract with the said Floyd, during this or the next year, for the redemption of the mortgaged property, then these presents," &c., shall be void, &c.

"The claimant then offered to show by evidence that the property levied on was the property with which the defendant in execution was making the crop the present year, which was mortgaged to claimant, and mentioned in the said mortgage, and offered the mortgage as evidence. To this the plaintiff objected, and the court sustained the objection to the introduction of the mortgage, both separately and in connection with the evidence offered; and thereupon the claimant excepted."

This ruling of the court is now assigned for error.

WATTS, JUDGE & JACKSON, for the appellant:

1. The mortgage was certainly unobjectionable on its face. The mortgage of the crop growing, and to be grown, is lawful.—Mauldin, Montague & Co. v. Robinson & Caldwell, 11 Ala. 980, and authorities there cited.

2. This mortgage gives the mortgagee the right to the possession of the property immediately.

3. The mortgagee can claim the property; and when such claim is made, it is the duty of the execution creditor, before he can sell the property, to pay the mortgage debt.—Code, § 2595.

4. The oxen levied on were included in the mortgage, and it was proposed to show this; and also to show that they were engaged in making the crop of 1854, which was itself mortgaged to the claimant. If the oxen, themselves mortgaged, can be levied on, the defendant in execution could not make the crop, in the making of which they were engaged; and thus a double injury would be done the mortgagee—the loss of the mortgaged oxen, and of the mortgaged crop. In this view of the case, it is insisted, that even if the mortgagee

could not, ordinarily, claim until the law-day of his mortgage, yet, when he has a present right, the plaintiff in execution cannot disturb it.

5. Section 2595 of the Code would be useless, if the mortgagee cannot claim until there has been a forfeiture. Independently of that statute, he could claim after a forfeiture.— P. & M. Bank v. Willis & Co., 5 Ala. 781; Hooks v. Anderson, 9 ib. 704; Magee v. Carpenter, 4 ib. 469. This statute says, that "the mortgagee" of the property levied on, may claim, &c. He is as much mortgagee before as after the forfeiture. The cases of McGregor v. Hall (3 Stew. & P.) and Purnell v. Hogan (5 ib.) were decided before the passage of the act of 1845 authorizing the mortgagee to claim; and that uses nearly the language of the Code. To hold now that the mortgagee cannot claim before the law-day of his mortgage, would be to decide that the act of 1845 and section 2595 of the Code have accomplished nothing.

N. HARRIS, contra :

The mortgage deed offered in evidence did not entitle the appellant to the possession of the mortgaged property until the first of January, 1855, the day on which the first debt fell due. It is settled law, in this State, that the mortgagor is entitled to the possession of the property until the law-day of the mortgage, unless the mortgage itself provides that the mortgagee shall take the possession before that day arrives. P. & M. Bank v. Willis & Co., 5 Ala. 780. There is no provision in this mortgage that the mortgagee shall take the possession before the law-day; the mortgagor had the right of possession until the first day of January, 1855, and the equity of redemption, and was in possession at the time of the levy; and the interest which he had was a valuable and clearly ascertained interest. The Code (§ 2455, ¶ 3) expressly subjects the equity of redemption, in either real or personal property, to execution, and provides that, when any interest less than the absolute title is sold, the purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities. The defendant in execution, then, at the time of the levy, and even at the time of the trial, had such an interest in the property as was subject to levy. Section 2595 declares,

that " when personal property, mortgaged to another, is levied on by execution, the mortgagee, or his assignee, may discharge the mortgage debt; and then the sheriff shall sell, as well for the payment of the mortgage debt, as for the satisfaction of the execution." The issue, upon a trial of the right of property, is, (§ 2588,) " that the property levied on is the property of the defendant in execution, and liable to its satisfaction." Now all these sections must be construed together, so as to give effect to each one of them, and no construction should be placed upon them which would lead to any absurd result. The policy of the law is, to subject all property (except what is specially exempt from execution) and all interests to the payment of the owner's debts.

There are many reasons why section 2595 should not be construed to allow the mortgagee to interpose a claim before the law-day. He is not bound to receive the mortgage debt, nor is the mortgagor bound to pay it, until it becomes due; and the mortgage may, as in this very case, be intended to secure, not only certain specific debts, but also debts that might afterwards be contracted for the purposes specified in the deed. In such case, it is impossible for the plaintiff in execution to know the extent of the mortgage debts; and if he does not know the amount for which the property is thus bound, how can he know the amount he must pay, or offer to pay, for the satisfaction of the mortgage debt? Suppose the mortgage debt is $10,000, and does not fall due for ten years, —that the mortgaged property consists of several articles each one of which is sufficient to pay the debt, and that an execution for only $50 is levied on a small portion of the property; can it be contended that the fact of the levy makes the whole mortgage debt become due, and compels the mortgagor to pay it or be deprived of his property? Such a conclusion would be absurd, and would entirely defeat the creditor's right, secured to him by section 2455, to subject the equity of redemption to the payment of his execution, without paying the mortgage debt. It is true, the act of 1845 allowed the mortgagee to interpose a claim to the mortgaged property before the law-day of his deed; but then the equity of redemption was not subject to levy and sale, unless accompanied by possession. The Code (§ 2455) subjects to levy

and sale under execution an interest which was not subject by the previous law; and to hold that the right to interpose a claim, secured by section 2595, extends only to the right to put in a claim after the law-day, will harmonize the two sections, and no absurd consequences will follow. When the equity of redemption is sold before the law-day, the purchaser will be entitled to the possession until that day, and to the right of redemption; and after the law-day the mortgagee is bound to receive the mortgage debt, which is then easily ascertained. If the mortgagee is about to sustain any loss or injury by the sale or removal of the property before the law-day, equity can afford him ample relief now, as it could before the adoption of the Code.

Again; the mortgage was properly rejected as evidence, because it provides for the payment of debts that might be contracted after its execution, and is therefore fraudulent and void on its face as to execution creditors of the mortgagor.

It is also void as to the appellee, because it mortgages property not then in existence, but to be afterwards grown.

There was no proof, nor any offer to prove, that any debt was due from the mortgagor to the claimant; and the recitals in the deed itself are not evidence against the plaintiff in execution.—McCain v. Wood, 4 Ala. 258.

RICE, J.—When an execution from a court of record is levied by the sheriff on personal property mortgaged to another, the mortgagee, or his assignee, may, by virtue of section 2595 of the Code, try the right of property, as provided in chapter second of title second of the Code, *before the law-day of the mortgage has arrived.*

To deny this, is to deny any meaning to the words employed in that section, which profess to confer a right on the mortgagee or his assignee; for it is very clear, that under section 2587, the mortgagee, or his assignee, is authorized to try the right of property, whenever such execution is levied on such property *after the law-day of the mortgage.*

Sound exposition requires effect to be given to every significant clause, sentence, or word in a statute; and the two sections above cited must be held operative to the full extent above indicated.—Smith's Com. on Stat. 710.

But the execution, under which the levy in this case was made, is an execution for less than fifty dollars, issued by a justice of the peace, and levied by a constable. The claim is interposed under section 2833 of the Code, found in title three, which is apparently devoted to "proceedings in civil cases before justices of the peace." The claim is interposed by a mortgagee, *before* the law-day of his mortgage arrived. Such a claim cannot be sustained, unless section 2595 extends to the mortgagee, or his assignee, the same right, when the levy is made by a constable under a justice's execution, as when it is made by a sheriff under an execution from a court of record.

It has ever been, and still is, the right of an execution creditor in this State, by suit in equity, to compel the creditors or beneficiaries provided for by a fair and valid deed of trust or mortgage to sell the property, or close the trust, on equitable terms, whenever such deed, by the long credit given, or otherwise, becomes oppressive or injurious to him.—Dubose v. Dubose, 7 Ala. 235 ; Pope v. Wilson, 7 *ib*. 690; Tarver v. Roffe, 7 *ib*. 873.

Until the act of January 25th, 1845, (Pamph. Acts, p. 136,) the mortgagee could not, by interposing a claim, or by any other proceeding at law, prevent the personal property embraced by his mortgage from levy and sale under execution against the mortgagor, before the law-day of the mortgage. Many sales were made under execution of the mortgagor's interest, before the law-day. Such sales, almost invariably, resulted in the sacrifice of the property, and in working injury both to the mortgagor and mortgagee. To prevent such injury and such sacrifices of property, which had been mortgaged in good faith, was doubtless the main object of the Legislature in passing the act of 1845, and in a substantial re-enactment of it in section 2595 of the Code.

If personal property embraced by a valid mortgage, the law-day of which will not arrive for several years, is permitted to be sold under execution at law, experience has proved that injury therefrom must result, either to mortgagor or mortgagee, or to both. This ought not to be, when they have acted fairly in the execution of the mortgage. There is no necessity for such injury. The execution creditor can, as we have above shown, by bill in equity, obtain all he ought to

have. He is the party who ought to be compelled to resort to chancery ; because the mortgagee, having fairly obtained a preference by his mortgage, ought to be permitted to stand on the defensive, and should not be forced (although he is allowed) to become an actor in a court of equity, to maintain an advantage honestly gained over other creditors.

If the execution creditor resorts to a court of equity, he must make the mortgagor and mortgagee parties to his bill. When a sale is decreed under such a bill, all the parties will be protected and benefited. Purchasers, knowing that the title under such a sale is free from encumbrances, will be more willing to give a fair price for the property. They will know what they are buying. · The proceeds of such a sale will be greater than could result from proceedings at law. The honest mortgage and costs of the Chancery Court will be first paid out of those proceeds, and out of the surplus the execution creditor will be entitled to satisfaction.

Although, in certain cases, where the amount of the mort-gage debt is known, the execution creditor may, if he chooses, pay it off, and sell, as shown in section 2595, yet he is not bound to do so in any case. He may resort to the Court of Chancery, as above shown, if he prefers it. And so, although the mortgagee may resort to chancery now, in any case where he could have resorted to it before the Code took effect, he is not bound to do it. He may interpose his claim, and try the right of property, before the law-day of his mortgage, if he prefers it.

The effect of section 2595 is, to secure to the mortgagee the right to elect whether he will interpose his claim at law, or resort to chancery for the protection of his interests under the mortgage ; and if he elects to claim at law, his claim, although interposed before the law-day, must be sustained, if his mortgage is executed in good faith, and for a valuable consideration, and is duly recorded.

This right of election in the mortgagee is not confined to cases where the levy is made by a sheriff under an execution from a court of record, but exists in cases where the levy is made by a constable under an execution from a justice of the peace. The letter, and equity, and reason of the statute, embrace the one class of these cases as well as the other ; and

in conferring this right on the mortgagee; no word is used, which excludes *him* from trying the right of property when the levy is made under a justice's execution.

The fact that a *constable* is not authorized to.sell, as well for the payment of the mortgage as of the execution, furnishes no sound objection to the conclusions above announced ; for it is obvious, there are many cases in which a mortgagee may, before the law-day, interpose his claim, but in which the execution creditor cannot discharge " the mortgage debt." For example, we state the case of a mortgage executed to secure the sureties of a public officer against loss by reason of his defaults. What is " the mortgage debt," in such a case, before half his official term expires? No man, nor court, can tell. It cannot be discharged by an execution creditor ; yet under such a mortgage, a claim might be interposed by the mortgagees. This serves to show, that the Legislature conferred on the execution creditor a privilege much more restricted than was conferred on the mortgagee.

The court below erred in excluding the mortgage offered in evidence by the appellant, which embraced the property levied on and in controversy in this suit.—Wallis v. Rhea,10 Ala. 451 ; 5 *ib.* 531 ; 7 *ib.* 698.

That mortgage is not void on its face.—Mauldin v. Robinson, 11 Ala. 980.

For the error of the court below in excluding the mortgage, its judgment is reversed, and the cause remanded.