# Abraham v. Carter.

## Trial of the Right of Property.

1. *Lien for advances; force and effect of.*—The statute creating a lien for advances to make crops (Rev. Code § 1858,) attaches to the mortgage or assignment of the crops not planted, or planted and not matured, when made in the form and for the consideration prescribed, the force and effect of a mortgage or assignment of personal chattels, having an actual or potential existence.

2. *Same; rights of transferree of.*—While the transferree of such a mortgage, may not be entitled to pursue, in his own name, the legal remedy for its enforcement, which the statute gives to the mortgagee, or assignee, he acquires by the transfer, an interest which a court of equity will protect, and when the property subject to mortgage is delivered to him, he is entitled to hold it against subsequent creditors of the mortgagor.

3. *Trial of right of property: what title necessary to maintain.*—Under our statutes a trial of the right of property may be maintained, whenever personal property is seized under legal process, when trespass, trover or detinue would lie against the officer making the seizure.

APPEAL from City Court of Montgomery.

Tried before Hon. JOHN A. MINNIS.

This was a trial of the right of property to two bags of cotton, between Abraham as plaintiff, Williams as defendant, and Carter as claimant. On the 28th day of January 1873, defendant executed a note for advances on his crop, under § 1858, R. C., to Shulman, Goetter & Wiel, and executed a mortgage on his crop to secure the debt, both of which were properly recorded on the 7th day of February 1873. At the time of the execution of the note and mortgage, defendant received advances to the amount of only $55, although the note and mortgage were for a larger sum ($200.) In the latter part of February 1873, Carter at the request of the defendant paid Shulman, Goetter & Wiel the $55 advanced by them, and the note and mortgage were by them transferred to Carter, by delivery merely. At the same time Carter advanced Williams, on the faith of the note and mortgage, $100 more. On May 16th, 1873, Williams executed to Abraham, a note under § 1858 of the Revised Code, and obtained advances thereon from him. From this date to Dec. 19, 1873, Carter advanced to Williams on the first note and mortgage, the further sum of $63, and of this amount $14 were ad-

[Abraham *v.* Carter.]

vanced on that last date. In November, 1873, the cotton in dispute was delivered by Williams to Carter, and by him stored in the "Central Warehouse" in the city of Montgomery and the receipts taken in his own name. On the 19th of December 1873, the attachment in this case was levied on the cotton, while in the warehouse, and Carter interposed his claim. An issue was made up, on the trial of which the above facts were shown, and also that the cotton was raised by Williams on the place cultivated by him during the year 1873, and to raise which he had obtained supplies under both notes.

The court charged the jury, that the transfer of the note and mortgage by Shulman, Goetter & Weil to the claimant, gave him a lien on the cotton levied on, to the extent of $55, the amount advanced by Shulman, Goetter & Weil to said Alex Williams, and paid by the claimant, and if the jury believe that the cotton had been delivered to the claimant under said note and mortgage, and by him deposited with the warehouse men as his cotton, then they must find for the claimant.

The court also charged the jury that the claimant had, by virtue of being the owner of the note, and mortgage executed by said Williams to Shulman, Goetter & Weil, such a title or interest in the property as authorized him to interpose a claim thereto.

SAYRE & GRAVES, for appellant.

FITZPATRICK & RUGELY, *contra.*

BRICKELL, C. J.—At common law, things not in actual existence, but which are said to have a *potential existence,* that is, things which are the natural product or expected increase of something already belonging to the vendor, were the subject of sale or assignment. Thus a sale or assignment of the profits arising out of the use of a personal chattel owned by the vendor, as the income to be derived from the navigation of a steamboat, or a crop of cotton growing on lands of which the vendor had possession, has been supported by the judgment of this court. *Stewart* v. *Fry* 3 Ala. 573; *Robinson* v. *Mauldin* 11 Ala. 977. A thing not having an existence, actual or potential, but the future acquisition of which is contemplated, if not capable of assignment or sale, is the subject of a valid agreement to assign or sell, as the wool of any sheep, or the milk of any cow, that the promissor may buy within the year, or any goods to

[Abraham v. Carter.]

which he may obtain title within a specified time. Benjamin on Sales, §78. So a mortgage of the hire or use of slaves, the mortgagor "may hire the next year to make a crop with," and the entire crop he may make the present and next year, though it is only contemplated the slaves may be hired, and the crops planted, has been deemed valid, the lien attaching when the slaves were hired, or the crops grew, and binding them from that time. *Floyd* v. *Morrow* 26 Ala. 353. *Butt* v. *Ellett*, 19 Wall. 544; *Sillers* v. *Lester*, 48 Miss. 513 ; It may be, that in a court of law, an assignment only of a right or interest, which is absolutely fixed and *in esse*, is enforced. In a court of equity, assignment not only of choses in action, but of contingent interests and expectancies, and also of things, which have no present actual or potential existence, but rest in mere possibility only, are supported. The assignment operates by way of present contract, to take effect and attach to the things assigned, *when and as soon as they come in esse*. *Mitchell* v. *Winslow*, 3 Story 639.

The operation of the statute, creating liens for advances to make crops, (R. C. §. 1858–60,) is to attach to the mortgage or assignment of the crop not planted, or planted and not matured, made in the form, and on the consideration prescribed, the force and effect of a mortgage or assignment of personal chattels, having an actual or potential existence, and to provide a speedy remedy for the enforcement of the rights of the mortgagee or assignee. The right of the assignee, is certainly equal in dignity to the right of any holder of a mere chose in action. It may not be capable of transfer, so that the transferree can pursue in his own name, the legal remedy for its enforcement, which the assignee or mortgagee is authorized to pursue. The transfer will create an interest in the transferree, which a court of equity will protect.

At law, while a sale of goods, to which the vendor has not title, or of which he has not possession is void, yet, if the vendor subsequently acquired title, and did any new act, for the avowed purpose of carrying the sale into effect, the sale became valid. *Head* v. *Goodwin*, 37 Maine 181 ; *Jones* v. *Richardson*, 10 Metc. 481. In *Bryan* v. *Smith*, 22 Ala. 534, an executory contract for the delivery of cotton in pledge, to secure a debt, was executed by the delivery of the cotton, and the right of the creditors to hold it prevailed over a subsequent attaching creditor of the debtor.

The transfer by Shulman, Goetter & Weil, to the claimant, of the statutory mortgage made by Williams, gave him in a court of equity all the rights of his transferrors. When the mortgagor delivered to him the cotton which was the

[Woolfolk *et al. v.* Ingram.]

subject of mortgage, this equity was coupled with possession, and gave him a title on which he could maintain trespass, detinue or trover against any one who should disturb his possession. *Bryan* v. *Smith, supra.* A trial of the right of property under the statute is a cumulative remedy to these actions, and, may when personal property is seized under legal process, be maintained, whenever these actions would lie against the officers making the seizure.

The charges of the city court, to which exceptions were taken, conformed to these views, and its judgment is affirmed.