# McKeithen *v.* Pratt & Co.

## *Trial of Right of Property.*

1. R. contracted with foremen, representing several squads of laborers, for the cultivation of his land during the year. He was to advance supplies to the foremen, and those under them, and the foremen were to receive a certain specified, definite portion of the crop, out of which they were to make payment for the advances. It was agreed that the necessary supplies should be furnished by R. through P. & Co., a mercantile firm, to whom R. was to pledge, and if necessary, mortgage their portions of the crops for advances. Early in the year all the parties went to P. & Co., and made these arrangements with them verbally. In February of that year R. executed to P. & Co., a mortgage upon all the crops of cotton, &c., which he or any one else might raise for him in the county during the current year. This mortgage was recorded November 27th, of the same year. On November 7th an execution issued on a judgment rendered against R. was placed in the hands of the sheriff, who levied it on different lots of cotton, grown on the land as the property of the defendant; but all of it with the exception of 1,704 pounds, was released under his claim of exemption.

The latter cotton had been reserved and set apart to the foremen of squads before the levy, and they were indebted to P. & Co., to the full value of the cotton, except one of them to whom a small amount was due, which was paid him in cash. P. & Co., executed a claim bond and obtained possession of the cotton, and afterwards had a settlement of accounts with the foremen.

*Held :*

1. The interest which R. and the foremen had in the cotton, was that of tenants in common.

2. As there were no executions in the hands of the sheriff against the foremen, their interest was not subject to be levied on and sold, and before levy the tenants in common had a right to make a fair division in severalty.

3. The crop having been thus divided, the portion allotted to the foremen became subject to the operation of the mortgage to P. & Co.

4. It was not necessary to the validity of the mortgage that it should be made in writing.

2. *Trial of right of property ; what title necessary to maintain.*—Where the claimant derives title from the defendant in execution to property which, but for the contract between them, would be subject to execution, it seems that the claimant must have the legal title to entitle him to try the right of property. This rule, however, has been altered as to mortgagees by statute.

3. *Same.*—Where the property levied on did not belong to the defendant in execution, but to a third person, a claimant, who shows that he has a just interest in the property derived from the owner, may try the right although he has not a perfect legal title.

APPEAL from Circuit Court of Autauga.

Tried before Hon. J. Q. SMITH.

The facts are sufficiently stated in the opinion.

W. H. NORTHINGTON, for appellant.

S. W. Sadler, *contra.*

MANNING, J.—Appellees claimed in the court below, four bales of cotton, 1,704 lbs., that were taken by the sheriff to satisfy an execution of appellant against one W. T. Rice; and the action was the statutory one, trial of the right of property.

The cotton was a portion of the crop made in the year 1872 on Rice's plantation in Autauga county, which was cultivated by him with the aid of three negro foremen of squads. He was to furnish among other things, these foremen with food and clothing for themselves and the laborers they should employ to aid them, and their families, and they were to be entitled to specified, definite portions of the crops made by themselves, and the hands they should employ, respectively, out of which portions or the proceeds thereof payment was to be made for the articles advanced for their benefit. The residue of the crop was to belong to Rice.

The evidence tends strongly to prove that in order the better to carry this arrangement into effect, it was agreed by Mr. Rice and the foremen mentioned, that supplies should be furnished by the mercantile firm of D. Pratt & Co., through Rice, and that they should pledge their portions of the cotton through him, and he might mortgage or pledge the same, for them, to D. Pratt & Co., for the payment of the articles so to be furnished by that house. Accordingly they all went to D. Pratt & Co., and made these arrangements, orally, with them. This was in the early part of 1872.

On the first day of February, in that year, Rice executed a mortgage to D. Pratt & Co., reciting that he was indebted to them to the amount of his note for $575.63, payable with interest from that date on the 1st day of December, 1872, and that they had agreed to advance to him goods, supplies and provisions during the year to the amount of $500 more, to enable him to make his crop of that year, and without which he could not make a crop, and that therefore to secure them, he conveyed to them among other things, all the crop or crops of cotton, corn, &c., "that I may raise or that any other person may raise for me in said county during the present year." The indebtedness to them was to be discharged the 1st of December, 1872. This mortgage was recorded November 27, 1872.

There is evidence tending to show that the 1,704 lbs. levied on, had been reserved and set apart as the portion of the cotton which belonged to the foremen of the squads, before

[McKeithen *v.* Pratt.]

the levy of the execution; that they were indebted to D. Pratt & Co. for their respective portions of the supplies furnished, to the whole value of the cotton, except one of them, to whom $10 remained, which was paid to him in cash—and that after the levy upon the cotton and the delivery of it to D. Pratt & Co., upon their executing the claim bond in this cause, a settlement was had between them and the foremen for the prices of the goods, on one side, and the value of the cotton on the other.

There were eight other bales of cotton at another place which had been levied on as Rice's, and some other property; but these had been released and surrendered as exempt from execution.

The issue tendered at the fall term, 1873, of the court, and on which the trial was had, was, "that the property levied on by the sheriff as the property of the defendant in execution, is subject to the execution."

The court gave the following, among other charges, to the jury:

2. If the jury believe that before the levy there had been a division of the cotton, and four bales set apart to the laborers as their portion of the crop grown on Rice's place during the year 1872, under their contract with him, the cotton thus set apart was not subject to the plaintiff's execution.

3. That the contract shown by the evidence in this cause between said laborers and claimants in relation to their interest in the cotton, imparted to the claimants such title as would authorize them to interpose a claim and try the right of property under the statute.

The appellant excepted to the giving of these charges, and asked others, one of which was given and the others refused. Among the charges refused was the following: "2. If the evidence satisfies the jury that the laborers agreed orally with the claimants to turn over to them their interest in said cotton in payment for advances to be made to them by claimants during the year 1872, and there was no written evidence of said agreement, this did not convey the legal title of said interest to claimants."

It is here insisted that the second and third charges given by the court are erroneous.

The interests which Rice and the foremen of the squads respectively had in the cotton raised on his lands, appears to have been that of tenants in common. As there was no execution against any of the foremen, in the sheriff's hands, their portions were not subject to be levied on and sold by

him; nor was there anything to hinder those portions from coming under the operation of the mortgage or pledge which had been made of them.    Until a levy was actually made, the tenants in common had the right to make a fair division of the cotton among themselves, so that each might have his portion in severalty.    This appears to have been done. Their several separate portions then were not subject to be sold to pay Rice's debts, any more than they had been before; but being ascertained and set apart from his, they became subject to the mortgage or pledge of them to D. Pratt & Co., if the jury believed such mortgage or pledge had been made.    The ascertainment of this, depending in part at least upon oral evidence, as well as of the fact of division, should have been left to the jury.

The eight bales falling to Rice's share having been levied on under the execution in favor of plaintiff, were on Rice's claim of them, surrendered to him as exempt from execution for his own use, and in this plaintiff below had acquiesced.    To let Rice's part of the crop be thus appropriated to his use, and the portions which belonged to the negroes associated with him, be taken to pay his debts, instead of being applied, as they had devoted them, to the payment of their own debts to their own creditors, would not have been consistent with right or the law. Yet, the third charge of the court to the jury is erroneous; it assumes as proved, that a contract between these negro men and D. Pratt & Co., of a certain character, had been established.    The evidence on this subject is chiefly oral, and although the proof upon the point be quite clear and convincing, the judge was not entitled to assume that it was established, and to predicate a charge to the jury upon such assumption.    This was error. *Stewart* v. *Russell*, 38 Ala. R. 619, and cases therein cited.

There was no error in refusing the second charge asked for by the plaintiff's counsel and refused by the court.    In this State it has been several times held that a mortgage of chattels may be orally made.

Upon the question of the right of claimants to interpose, unless there be a legal title in them, we may remark that if they derived their title from the defendant in execution, to property which but for the contract with them, would have been subject thereto, it is probably true that they must have a legal title in themselves to enable them to maintain a trial of the right of property. Though in reference to mortgagees, this has been qualified by statute.    R. C. 3024.    *Floyd* v. *Morrow*, 26 Ala. 353.

But if the property levied on did not belong to defendant

[Tilford v. Torrey ]

in execution, but to a third person, we are not prepared to hold that the claimant who shows this, and shows also that he has a just interest in the property derived from him who is the true owner, must also show that he (the claimant) has a perfect legal title. This would not be in harmony with prior decisions of this court, or with provisions contained in the Code. *McGrew* v. *Hart*, 1 Port. 8, 175; *Foster* v. *Smith*, 16 Ala. 192; *Thomas* v. *DeGraffenreid*, 17 Ala. 602; R. C. §§ 3024, 3016, 3017.

Reversed and remanded.