| 61 | 434 |
| 95 | 17 |

# Carter *v.* Wilson.

## *Trial of Right of Property.*

1. *Demurrer; when rulings on, not revised.*—If rulings upon demurrer do not appear, otherwise than by recitals in the bill of exceptions, they will not be revised on error.

2. *Lien for advances to make crop.*—The crop-lien is created, when advances are made in compliance with the statute, and not by levy of the attachment, which is but process to enforce an existing lien,—while in ordinary attachments the lien does not begin until the levy; and hence, where property attached for advances is claimed, under a right or title ante-dating the levy, the advancer may recover under his crop-lien, if older than or superior to the right of the claimant, though such right accrued prior to the levy.

3. *Lien for advances; who can not enforce by attachment.*—The assignee of a note or obligation given for advances to make a crop, can not enforce the lien by attachment; the statute confers the right to that remedy upon the advancer alone.

4. *Trial of right of property; what confers sufficient title to maintain.* H. owed W. and gave him an instrument intended to create a lien for crop advances, but such was not its legal effect. W. obtained possession of a part of the crop from H. with his consent, to pay the debt with it, and sold to S.,—*held:* S. had such title or right of possession as would enable him to maintain a trial of the right of property.

5. *Lien for advances; what not entitled to.*—A note or other obligation acknowledging an indebtedness for advances to make a crop, &c., will not create a lien on the crop, if in fact the consideration of the note is a mere antecedent debt of the maker; and one not a party or privy to the instrument may contradict its recitals by parol, showing a different consideration from that recited.

6. *Introduction of evidence; what ruling as to, not revisable.*—It rests within the sound discretion of the court, to allow a party to introduce further

[Carter v. Wilson.]

evidence, even after the close of the argument; and the exercise of that discretion is not revisable.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JAMES Q. SMITH.

Appellee, Carter, commenced suit by attachment in November, 1871, before a justice of the peace, to enforce a lien for advances to one Harvey, to enable him to make a crop for the year 1871. The attachment was levied on a bale of cotton in possession of and claimed by one Wilson, the appellant. The justice having decided that the cotton was subject to the attachment, an appeal was taken to the Circuit Court.

In that court Carter filed "an issue," which, after stating that the cotton levied on in the cause and claimed by Wilson is subject to the attachment, proceeds to state facts showing that said cotton is the property of said Harvey, and grown by him during the year 1871; that on the 19th day of April, 1871, Harvey obtained advances from Tatum & Wilkinson to enable him to make a crop for that year, and made and signed an instrument, properly executed and recorded five days afterwards, in terms which gave said Tatum & Wilkinson a statutory lien on the crops of Harvey; that on the 30th day of October, 1871, Tatum & Wilkinson for value received transferred, by endorsement in writing, the note or obligation of Harvey to said Carter, and the same is the cause of action on which the attachment was issued.

Wilson demurred to this issue, on the ground that it showed that the advances were made by Tatum & Wilkinson and not by Carter; also, because it showed that Carter had made no advances.

There is no judgment entry showing what was done with the demurrer, but the bill of exceptions recites that it was overruled, and the claimant excepted. The claimant then answered that the bale of cotton is not subject to the attachment; that said "Harvey on the 1st day of January, 1871, gave one Isaac Wade a written lien on his crop for the year 1871, purporting to be for advances made by said Wade to enable said Harvey to make the crop, which was duly recorded on the 3d day of February, 1871; that said Wade obtained possession of the cotton in controversy under said written lien from Harvey, and being so in possession sold and delivered the cotton to claimant, for a valuable consideration, before the levy of the attachment; that claimant had no notice, actual or constructive, of any lien in favor of Car-

[Carter v. Wilson.]

ter, and that the lien of Wade was prior to the title of Tatum & Wilkinson.

The execution of Harvey's note and mortgage to Tatum & Wilkinson, on the 19th day of April, 1871, and its recording within five days thereafter, was proved, as also that the consideration therein stated was the true consideration—being $100 advanced by them to Harvey to enable him to make a crop the current year. It was also shown that the cotton in controversy was raised by Harvey during the year 1871, upon the lands in Montgomery county, mentioned in the mortgage, with the advances obtained from Tatum & Wilkinson.

Harvey on the first day of January, 1871, executed his note or obligation to Wade, for the sum of one hundred dollars, which attempted to recite, in the language of the statute, was obtained *bona fide* as an advance to enable him to make a crop, &c. This instrument was duly recorded on the 3d day of February, 1871. The court permitted Harvey to testify that advances to make a crop were no part of the consideration of this note, but that it was given in consideration of a debt Harvey contracted with third persons in the year 1869, and which Wade paid for him. Claimant objected to the admission of this testimony, on the ground that it contradicted the terms of the instrument, but his objection was overruled, and he excepted.

There was evidence tending to show that Wade, in the fall of 1871, obtained possession of the cotton by delivery from Harvey, in order to pay the debt the latter owed, and sold and delivered it to Wilson for value, before the levy.

This was substantially all the evidence up to this stage of the proceedings, and after the argument of counsel, the court charged the jury, among other things, "even if claimant purchased the cotton from Wade, such purchase would not convey any title to the claimant, unless it was shown that such sale was made under attachment sued out to enforce the alleged lien of Wade." The claimant, Wilson, duly excepted to this charge.

The claimant then asked the court to charge the jury as follows: "4. An advance lien attachment can only be sued out by the party actually making the advances; and if the jury believe from the evidence that Tatum & Wilkinson made the advances to Harvey, the jury must find for the claimant." The court refused this charge, and the claimant excepted.

After this, the court, at the request of the claimant, charged the jury that the burden of proof was on the plaintiff, to prove the issuance and levy of an advance lien attachment.

[Carter v. Wilson.]

The plaintiff then asked and obtained leave, against the objection and exception of the claimant, to introduce the attachment issued.

The jury found for the plaintiff, and claimant Wilson appeals.

The ruling upon demurrer, the charge given, and permitting plaintiff to introduce the attachment in evidence, are now assigned as error.

L. A. SHAVER, for appellant.—Carter had no lien which could be enforced by the statutory attachment.—*Foster v. Westmoreland*, 52 Ala. 223. Wilson could maintain this action, even if Harvey's obligation to Wade was ineffectual. *Carter v. Abraham*, 53 Ala. 8. These two cases show the error of the court below in the charges given and refused.

FITZPATRICK & RUGELY, *contra*.—The object of the legislature in the passage of the advance law was to encourage and aid planters in obtaining supplies and advances. More aid of this kind will be extended, if the advancer can readily dispose of his security—if his transferee takes the rights he had. The present statute is not near so restrictive as that giving the landlord a remedy by attachment. That statute said the *landlord* should have, &c.; implying a *personal* right. The act here considered, says the *advances* shall be a lien. In the one case the lien is incident to the *personal* relation ; in the other, the lien is incident to the debt, the *advance*. The debt having been properly transferred in writing, the lien went with it. This view takes the case without the influence of the decision in *Foster v. Westmoreland*, 52 Ala. 223.

MANNING, J.—This was a trial of the right of property, for a bale of cotton seized under an attachment issued to enforce a crop-lien under the statute upon that subject. Appellee, Carter, was plaintiff in the attachment suit; one Harvey was defendant; and appellant, Wilson, claimed the cotton as his—and from the verdict and judgment adverse to his claim of ownership, he appealed to this court. The controversy is between him and the plaintiff in the attachment suit.

The assignment of the overruling of the demurrer of the claimant to the issue tendered by plaintiff upon the trial of the right of property, as an error, has no basis to rest upon in this transcript of the record of the Circuit Court. The

recitals in a bill of exceptions, it has been several times. ruled, can not be regarded by us as showing what *judgments* were rendered in that court. Its judgments upon demurrers to be valid, must be entered on the minutes of the court— the record it keeps of its daily proceeding. There is no copy in this transcript of any such minute entry of a judg- ment upon the demurrer. The correct practice, though in forming the issue upon a trial of the right of property, is that indicated by the statute. It was sufficient for plaintiff to allege, and better that the cotton attached was the prop- erty of defendant in the attachment, and liable to seizure under it. Under this he would be authorized to make proof of his crop-lien, and right to an attachment, if entitled thereto, by reason of the lien having been acquired for ad- vances he had made.

As we said in *Boswell & Wooley v. Carlisle, Jones & Co.,* 55 Ala. 554, ordinarily, an attachment lien begins from. the time of the seizure, or levy upon the property. But this is not true of a crop-lien which the process of attachment is used only *to enforce.* This lien began before the writ was issued—it was created by a compliance with the terms of the statute by force of which it exists. Hence, if a claimant of produce attached as subject to a crop-lien, prove a title and right of possession thereto, ante-dating the levy of the attachment, the plaintiff in the action must go back and produce evidence of his crop-lien which will show it to be older than, or superior to the right of the claimant, and a lien which he has a right, (in the language of the statute,) " to · enforce," by that writ.

The writ of attachment in this cause, sued out by Carter in November, 1871, was in that month levied upon the cot- ton in controversy as part of the crop made by Harvey in that year. But the cotton was then and before, in posses- sion of claimant, Wilson, as a purchaser of it from one Wade. Wade asserted a right to it under an instrument made by Harvey, January 1st, 1871, which is set out as ex- hibit B, in the bill of exceptions, and was intended to create a crop-lien on Harvey's crop of 1871, but did not have that effect, both because not in proper form, and because not given to secure advance to enable Harvey to make a crop.. It is capable though of operating as an equitable mortgage for the payment of the pre-existing debt which the instru- ment was made to secure. And if (as it was admitted he would testify,) Wade obtained the cotton from Harvey with, the consent of the latter, to pay his debt with, this would:

give to Wade or to Wilson, the purchaser from him, such a possession and right of possession as would enable him to maintain his standing as a claimant in the statutory action of the "trial of the right of property," and put the plaintiff in the attachment to proof of his superior crop-lien, and of his right to enforce it, according to the statute, by attachment. In fact, the situation of Wilson would be very nearly the same as that of Carter was in the case of *Abraham v. Carter*, (53 Ala. 8), in which Carter was claimant, and where this court said: "The transfer of S. G. & W. to the claimant, of the statutory mortgage made by Williams, gave him in a court of equity, all the rights of his transferrors. When the mortgagor delivered to him the cotton which was the subject of the mortgage, this equity was coupled with possession, and gave him a title on which he could maintain trespass, detinue or trover against any one who should disturb his possession.—*Bryan v. Smith*, 22 Ala. 534. A trial of the right of property under the statute, is a cumulative remedy to these actions, and may when personal property is seized under legal process, be maintained whenever these actions would lie against the officers making the seizure."—See also, *Boswell v. Carlisle*, *supra;* and *Smith, Administrator, v. Brown, Administrator*, (in manuscript.)

In the present cause, therefore, Carter as plaintiff in the litigation, in making out his case, would be compelled to produce and rely upon the instrument executed by Harvey to Tatum & Wilkinson, and by them assigned to him, Carter. And this brings up the question, whether as their assignee, he succeeded to their right of suing out a writ of attachment, and by virtue of it, seizing the crop made by Harvey. In regard to this, we are not able to perceive that it differs from the like question in relation to the assignee of a rent-note given to a landlord, which arose in *Foster v. Westmoreland*, 52 Ala. 223. It was therein held that the extraordinary remedy by attachment allowed to the landlord could not be asserted by the assignee of the rent-note. We feel compelled to hold that the same ruling is applicable in the case of an assignee of a note or obligation creating a crop-lien. The law expressly provided (Revised Code, § 1860), that the person having such a lien, (meaning, as we understand—the person to whom it is given,) "shall have the same rights and remedies to enforce such lien as *landlords* have in this State, for the collection of rents." This enactment seems to make the decision in *Foster v. Westmoreland* the more applicable.

According to the views above expressed, the circuit judge erred in his charge that—" even if claimant purchased the cotton from Isaac Wade, such purchase would not convey any title to claimant, unless it was shown that such sale was made under attachment sued out to enforce the alleged lien of said Wade." If the jury believed from the evidence that Harvey executed the instrument represented by Exhibit B., to secure payment of a debt he justly owed to Wade, and in September or October afterwards delivered the bale of cotton in controversy, a part of the crop made by him that year, to Wade, for him to sell and pay the debt due to him, and he sold it to Wilson,—these acts conferred upon Wilson a title which would enable him to maintain his claim in this action, against a plaintiff who was not entitled to have it taken from him by attachment.

The court would have erred also in refusing to give the charge marked 4 (6) if it was in writing when asked; which does not appear.

There was no error in allowing evidence that the instrument marked Exhibit B., was not executed to secure the repayment of money advanced to make a crop with. Carter or his assignors not being parties to it, had the right to prove its recitals to be false.

It was in the discretion of the court to permit the writ of attachment and sheriff's return thereon to be introduced in evidence before the retirement of the jury.

For the errors indicated the judgment of the Circuit Court must be reversed, and the cause be remanded.