[Patapsco Guano Co. *et al.* v. Ballard, Admx. Ballard, Admx. v. Patapsco Guano Co *et al.*]

# Patapsco Guano Co. *et al.* v. Ballard, Admx.
# Ballard, Admx. v. Patapsco Guano Co. *et al.*

*Proceeding in Probate Court on Settlement of Insolvent Estate.*

1. *Mortgage on unplanted crop valid in equity.*—A mortgage on an unplanted crop does not pass to the mortgagee the legal title to the crop as it may be planted, or as it may come into existence; but in a court of equity it operates by way of present contract, taking effect and attaching to the crop when, and as soon as, it comes *in esse*, creating a right the court will enforce against all others than *bona fide* purchasers for value.

2. *Holder of equitable title may try right of property at law.*—Under Code, § 3004, providing that the "right of trial to property shall include any person who holds a lien upon, or equitable title to, such property," a mortgagee of an unplanted crop, as soon as the crop comes into existence, may try his right to it at law, as though he had the legal title.

3. *Mortgagor of unplanted crop is trustee for mortgagee.*—Where a mortgage is given on an unplanted crop, so soon as the latter comes into existence, the mortgagor, or his assignee with notice, becomes a trustee holding the legal title for the benefit of the mortgagee, and whenever such equitable interest exists, the courts will interfere for its protection.

4. *Mortgagee of unplanted crop becomes vested with the legal title on delivery to him of the crop.*—A mortgagee of an unplanted crop, when the latter comes into existence and is delivered to him, becomes the owner of the full legal title and may maintain trespass, trover or detinue against any one who disturbs his possession, or, if before it is delivered to him, the mortgagor, or his assignee with knowledge of the mortgage lien, should receive and dispose of it, either or both would be liable in case to the mortgagor for the value of the property disposed of.

5. *Administratrix of deceased mortgagor may apply proceeds of the mortgaged crop to mortgage although estate is insolvent.*—Where, in 1890, B. mortgaged the crops to be grown on his lands in 1891, and thereby also transferred all his claims for rent and advances during 1891, and after his death in August, 1891, his widow, as administratrix, collected

[Patapsco Guano Co. *et al.* v. Ballard, Admx.  Ballard, Admx.  v.
[Patapsco Guano Co. *et al.*]

the rents and advances, and paid them to the mortgagee, to satisfy the lien; unsecured creditors had no right to the proceeds of the crops under the lien until the mortgagee's prior right was satisfied, though the estate was insolvent and such advances were made by the mortgagor, on his own credit, through a merchant.

6. *Administratrix not entitled to credit for money of estate paid to relieve her exempt property from lien of decedent's mortgage.*—Where the intestate leaves a mortgage on personal property, part of which is set apart to the widow as exempt, and afterwards as administratrix she pays the mortgage in part from proceeds of the mortgaged property, and there being no other personal property. she pays off the balance of the mortgage debt to relieve her exempt property from the lien, she is not entitled on settlement of her account to charge the estate with said last payment.

7. *Rents of lands left under mortgage by decedent and collected by administratrix may be applied to mortgage debt.*—Where it appeared that there were mortgages on the lands of an estate; that, in default of annual interest payments, they were liable to foreclosure; that the principal indebtedness was scarcely more than half the value of the lands: that after an order of sale, the lands were twice offered without getting a bidder; that the times and circumstances were unpropitious for a sale,—proceeds derived from renting the lands were properly applied by the administratrix to the payments required by the mortgages, though part of the lands were set apart to her as exempt.

8. *Administratrix of insolvent estate not entitled to credit for costs paid on unauthorized compromise of suit.*—Costs paid by an administratrix of an insolvent estate in a case against a debtor, and compromised by her, without an order of the court, are not a preferred claim against the estate.

9. *Liability of executor or administrator for rents.*—Under Code, § 2102, an executor or administrator may rent lands belonging to the estate without demanding security for the rent, and is not chargeable for a failure to collect it, where it is shown that he acted judiciously, under the circumstances, for the best interest of the estate.

APPEAL from the Probate Court of Pike.

Tried before the Hon. W. J. HILLIARD.

The proceedings in these cases were had upon the settlement of Sarah A. Ballard, as administratrix of the estate of J. C. Ballard, deceased, after the said estate had been declared insolvent.

J. C. Ballard, a resident citizen of Pike county, Alabama, died in said county in August, 1891, and left surviving him a widow and minor children. On the 22d of September, 1891, letters of administration upon said

estate were granted to said widow, Sarah A. Ballard. On April 8th, 1895, the estate was duly declared insolvent, and the administratrix was ordered to make settlement on May 13th, 1895. The administratrix filed her account and vouchers on said day for settlement, and said cause was continued to be heard on May 27th, 1895. In her account the administratrix asked credit for the sums of $439.14, $450.43, $739.65, paid to the Farmers & Merchants Bank; and the Patapsco Guano Company, and J. B. Collier, creditors of the estate, objected to said items of credits on the ground that they were not preferred claims, the estate being insolvent. The administratrix then introduced in evidence a mortgage to the said Farmers & Merchants Bank for the sum of $1,665.50, given by said Ballard during the year 1890. Said mortgage, after conveying to said bank the crop and other personal property to secure the debt to said bank as to rent and advances made by said Ballard during the year 1890, contained these words, "And I also transfer to said Farmers & Merchants Bank all claims for rent and advances the next year." Said mortgage contained a power of sale, with a right of seizure. The proof showed that said Ballard rented land to Z. T. Amos, T. S. Hunt, J. C. Grant and H. J. Jackson, in 1891, and rented land and made advances to R. Jordan and J. C. Grant in 1891. That the advances so made amounted to about one thousand dollars. That the advances made through F. C. Bass amounted to about $250. The personal property in said mortgage, to-wit., mules and a wagon, was set apart to the widow as exempt and appraised at $315.72. The administratrix then offered evidence that the payments objected to were made to said bank out of the proceeds of rent and advances due Ballard in 1891, and which said advances were made after the execution of said mortgage, except the sum of $59, which amount was paid out of the general assets of the estate, the amount collected for rent and advances not being sufficient to make said payment to said bank.

F. C. Bass testified that he was a merchant in Brundidge where said Ballard resided in 1890 and 1891, and that said Ballard did not have a mercantile business, and that he did not own the said advances before they were made, but that he would come to him and have him

make the advances, and that they would be charged to
said Ballard on witness's books.  That he did not know
whether other merchants did the same thing or not.  The
rent due in 1891 was collected.

The testimony showed that after all the other property
embraced in said mortgage, including rent and advances,
except the mules and wagon, were exhausted in making
the above payments to said bank, there was a balance of
$59 that was paid out of proceeds of property not em-
braced in said mortgage.  Also that there were no other
mules or wagon belonging to said estate, and that those
set apart as exempt, or others, were necessary upon the
homestead set apart.  This was substantially all the evi-
dence as to these credits asked by administratrix.  Said
creditors' objection did not apply to the rents transferred
by said mortgage, but only to the advances of about
$1,000.

The court allowed the administratrix credit for all
these amounts except the fifty-nine dollars, which was
denied.  And to this action of the court, both the appel-
lants, creditors of the estate, and the administratrix,
each severally excepted.  Said administratrix, in said
account, asked for a credit of $108, for each of the years
1891,1892,1893 and 1894, paid partly as interest and partly
as principal of debts owed by said estate.  Said named
creditors objected to the allowance of said items as
credits because the same were not preferred claims
against said insolvent estate.

Administratrix then offered in evidence a mortgage
executed by deceased, Ballard, in his life time, for
$1,700 on 320 acres of land, 120 being a part of the 160
set apart to the widow as exempt by the court, which
exemption was allowed before any of the above payments
were made.  Said mortgage was due Nov. 1, 1894.  Ad-
ministratrix offered in evidence another mortgage by
said Ballard on the same land for $170.  The $1,700
mortgage provided for the payment of the interest annu-
ally on the 1st day of November of each year beginning
in 1891, and the $170 mortgage provided that it should
be paid in equal instalments beginning November 1,
1891, and ending November 1, 1894, and both of said
mortgages provided that in case of failure to pay either
of said annual payments at the election of the mort-

gagees, the whole debt should become due and liable to be collected under the power of sale in each of said mortgages. It was also proven that about the last of the year 1891, said administratrix had obtained an order to sell the land belonging to said estate to pay debts, and in the early part of 1892 had offered the same for sale, and could not get a bidder, and again in the winter of 1892, had offered the same for sale and could not get a bidder. That at the time she paid the first instalments of interest on said $1,700 mortgage, to-wit, November 1, 1891, said land was worth about ten dollars an acre. But that since that time, land has declined in value in that neighborhood, and in consequence thereof and of said mortgages being partly on the homestead and lands of the estate, she could not get a bidder for said lands. That the amount paid on the said 1st of November, 1891, was $171.50, and that of this $108 was paid out of the general fund of the estate and not from the rents of the land, as the same had been used in paying the mortgage to the Farmers & Merchants Bank. The above mortgages did not cover any crops to be grown on said land at any time, nor rents arising from said land, and the mortgagee, as such, never claimed the same. The said amount of $171.50, embracing said interest and part payment on $171 mortgage, embraced $136 as interest, and the balance as principal on said debt. Said administratrix asking credit on this payment for the sum of $108, asked that the said amount of $171.50 be paid by the estate and the widow according to the proportion as the number of acres of the estate in said mortgage bears to the number of acres belonging to the widow in said mortgage, making $108, the result of the proportion to be borne by the estate. The evidence showed that in 1891 and 1892 the land belonging to the estate in said mortgage rented for four bales of cotton, and one year rented for five bales, and the land of the widow in said mortgage during the same time rented for six bales of cotton. It was shown that each year, there was enough rent received from the land of the estate in said mortgage to pay $108 except in 1891. The court, this being all the evidence on these questions, denied the administratrix a credit for any amount paid on this debt for 1891, and as to the payments made in 1892, 1893 and 1894, the

court allowed administratrix a credit each year for
$68.60, which is the result of the proportion, that the
estate and widow should pay the amount of $171.50, in
the ratio of 4 bales to 6 bales. The appellant cred-
itors of said estate, reserved an exception to the action
of the court in allowing any credit for payments in
1892, 1893 and 1894. There were other rulings of the
court to which exceptions were reserved by the admin-
istratrix, but it is deemed unnecessary to set them out
in detail.

From the decree of the court allowing and disallowing
the several claims of the administratrix, which were ob-
jected to, both the objecting creditors and the adminis-
tratrix appealed. The said creditors assign the follow-
ing errors: "1st. The ruling of the court in its allow-
ance of credit for payments made the Farmers & Mer-
chants Bank, except the $59. 2d. The allowance of
credit to the administratrix of any amount paid as in-
terest on mortgage debt of $1,700 and principal of $170."
The administratrix assigns as error, among other rul-
ings, the following: "1st. The refusal of the court to
allow the full amount paid to said Farmers & Merchants
Bank, and not allowing her the credit of $59 paid to
said bank. 2d. The failure of the court to allow admin-
istratrix a credit of $108 for each of the years 1891, 1892
1893 and 1894, on payments made on interest on the
$1,700 debt, and principal of the $170 mortgage debt."

WORTHY & FOSTER and BRANNON & SAMFORD, for the
creditors.

M. N. CARLISLE, for the akministratrix.

HARALSON, J.—1. It is provided by statute, that
"The claim of the landlord for rent and advances, or for
either, may be by him assigned, and the assignee shall
be invested with all the landlord's rights, and entitled
to all his remedies for their enforcement. "Code, §
3059. And in the statute for the trial of the right of
property, the provision is found, that "This right of trial
to property shall include any person who holds a lien
upon, or equitable title to such property." Code §
3004.

By former decisions of this court, it was settled, that a mortgage on an unplanted crop does not pass to the mortgagee a legal title to the crop as it may be planted, or as it may come into existence ; but, that in a court of equity it operates by way of present contract, taking effect and attaching to the crop when, and as soon as it comes *in esse*, creating a right the court will enforce against all others than *bona fide* purchasers for value. *Abraham v. Carter*, 53 Ala. 8; *Booker v. Jones*, 55 Ala. 266 ; *Reese v. Coats*, 65 Ala. 256; *Columbus Iron Works v. Renfro*, 71 Ala. 577. And it was also held, that such a mortgagee, not having the legal title, could not maintain a trial of the right of property, if when the crop came into existence, a creditor of the mortgagor should seize it on legal process ; that his remedy for the recovery of the things in specie, was in equity exclusively. *Stern v. Simpson*, 62 Ala. 194 ; *Columbus Iron Works v. Renfro*, *supra*. But, this latter doctrine has been changed by the Code in the section last referred to, and one having a lien upon or equitable title to the property may now claim and try his right to it at law, as though he had the legal title. *Hardy v. Ingram*, 84 Ala. 544 ; *Ballard v. Mayfield*, 18 So. Rep. 29.

In *Abraham v. Carter*, *supra*, it was said, "A thing not having an existence actual or potential, but the future acquisition of which is contemplated, if not capable of assignment or sale, is the subject of a valid agreement to assign or sell   *   *   *   So a mortgage of the hire or use of slaves, the mortgagor may hire the next year to make a crop with, and the entire crop he may make the present and next year, though it is only contemplated the slaves may be hired, and the crops planted, has been deemed valid, the lien attaching when the slaves were hired, or the crops grew, binding them from that time. *Floyd v. Morrow*, 26 Ala. 353; *Butt v. Ellett* 19 Wall. 544 ; *Sillers v. Leslie*, 48 Miss. 513   *   *   *   *   In a court of equity, assignment not only of choses in action, but of contingent interests and expectancies, and also of things which have no present, actual or potential existence, but rest on mere possibility only, are supported. The assignment operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come *in esse*. *Mitchell v. Win-*

*ston*, 2 Story, 639." *Booker v. Jones*, 55 Ala. 266.  So
soon as the crop or other thing mortgaged exists, the
vendor, or his assignee with notice, becomes a trustee
holding the legal title for the benefit of the mortgagee.
And whenever this equitable ownership or interest ex-
ists, the courts will interfere for its protection.  *Mayer &
Co. v. Taylor*, 69 Ala. 406.  If the property in such a mort-
gage when it comes into existence is delivered to the
mortgagee, his legal title to it becomes complete, and he
may maintain trespass, trover or detinue against any
one who should disturb his possession; or, if before it is
delivered to him. the mortgagor or his assignee, with
knowledge of the mortgage lien, should receive and dis-
pose of it, either or both would be liable in case to the
mortgagee for the value of the property disposed of.
*Hurst v. Bell*, 72 Ala. 340 ; *Hussey v. Peoples*, 53 Ala. 340;
*Abraham v. Carter, supra.*

J. C. Ballard on Nov. 15, 1890, mortgaged to the Far-
mers & Merchants Bank, the crops to be grown on his
lands in the year 1891, and transferred to said bank, by
said mortgage, all his claims for rent and advances dur-
ing the year 1891.  Said mortgage was given, also, on
certain mules and wagon, and was to secure a debt of
about $1,700.  Said Ballard died, afterwards, in August,
1891, and his widow, Sarah A., was appointed as his
administratrix.  She collected these rents and advances,
and paid them over to said bank on its mortgage lien
on them.  In making these payments, she did what was
right and legal to be done, and what the bank could
have enforced by appropriate action, whether the estate
of Ballard was solvent or insolvent.  The creditors had
no right or claim to the proceeds of the crops under lien
for these rents and advances, until the bank's prior
right to them was satisfied ; and as the amount collected
and paid over was not sufficient to discharge the mort-
gage debt, they were not injured.  *McNeill v. McNeill*, 36
Ala. 110 ; *Loeb v. Richardson*, 74 Ala. 312.

The fact that Ballard was not a merchant, but a far-
mer, and purchased the advances he made to his tenants
from one Bass, by getting Bass to advance them on his
credit, did not, in any way, interfere with the acquisi-
tion by Ballard of a lien on the crops for the advances
thus made. It was he who owned and made the advances

and not Bass. The latter had and claimed no lien on the crops for the goods he sold Ballard.

2. The evidence showed, that after all the property included in said mortgage, except the mules and wagon, was exhausted in discharge of said mortgage debt to the bank, there remained due and owing as a balance thereon, the sum of $59, and this sum, the administratrix paid, in full satisfaction of the mortgage, and that the mules and wagon had been appraised at $315, and set apart to her as exempt, by commissioners appointed by the probate court, before any amounts had been paid by her, as administratrix, on said mortgage. There is no proof that there was any other personal property belonging to the estate. The court disallowed this credit to the administratrix, and in this there was no error. She paid this sum, for her own benefit, to relieve property which had been valued and set apart to her as exempt, from incumbrance : and besides, the presumption might be indulged to sustain the ruling of the court, that the commissioners in valuing the property, had reference to the incumbrance on it.

3. The proof tended to show, that said Ballard in his lifetime,—on November 1, 1890,—executed two mortgages on 320 acres of land, to secure two debts, one for $1,700, due the 1st of November, 1894, and provided for the payment of the interest on the debt, annually, on the first days of November of each year ; and the second, for a debt of $170., to be paid in equal annual installments, on the first days of November, 1891, and ending with the 1st of November, 1894. Each of said mortgages contained the provision, that in case of the failure to make either of said annual payments, as in each provided, the whole debt should become due and payable, and the mortgage should be subject to foreclosure under its power of sale, at the election of the mortgagee. It was also shown, that about the last of the year 1891, the administratrix obtained an order of the court for the sale of the lands belonging to the estate to pay debts, and in the earlier part of 1892, and again in the winter of that year, had offered the same for sale and could not get a bidder ; that on November 1st 1891, said land was worth about $10 per acre ; that since that time, land had declined in value in that neighborhood, and in

consequence of that fact, and that the homestead consisted in part, of 120 acres of the land in the mortgage, she could not get a bidder for the land which had been ordered sold by the court to pay debts. It was also shown, that on the 1st of November, 1891, the administratrix paid $171.50 on said mortgages,—$136. as interest on the first one, and the remainder, as principal on said second debt and mortgage, and that of the amount so paid, $108. was paid out of the general funds of the estate, and not out of the rent of lands. The same evidence was offered, by the administratrix as to said payments due 1st November, 1892, 1893 and 1894, and she claimed and asked a credit in proportion to the value of the two parcels of land,—that belonging to the estate, and the portion of it which had been set apart to her as exempt. There were 320 acres under mortgage, by the intestate. One hundred and twenty acres of this 320, had been set apart to the administratrix as a part of the homestead exemption allowed her. She contends, that as she made these annual payments out of the rents and profits of the 320 acres, she should be allowed credit for them, in proportion to the value of the respective parts of the lands, her portion being 120 and that of the estate 200 acres. When so allowed, the abstract states, that her part was shown to be $108 ; but it also states, that it was shown, that there was enough rent received from the land of the estate included in said mortgage, to pay $108., each year except the year 1891. That year it will be remembered, all the crops and rents were mortgaged to the Farmers & Merchants Bank, and were appropriated in that direction. The court allowed the administratrix credit, each year, for $68., which it is stated was her proportionate share of the rents. The creditors excepted to the allowance of any credits at all, and the administratrix excepted because she was not allowed credit for the $108., each year. There was certainly no error in allowing her credits for annual payments of $68., which was the ascertained rent of her share of the homestead land. That belonged to her, yet it was subject to the mortgage, and she appropriated it towards its payment. But, why not have allowed her credit for the $108., each year,—the total rents received by her for the lands under mortgage, and devoted by

her to the extinguishment *pro tanto* of the mortgage debt? It was held by this court in *McNeill v. McNeill*, 36 Ala. *supra*, that when it will promote the interest of an insolvent estate, the administrator has authority to discharge incumbrances upon the property of the estate. Here, were unforeclosed mortgages on the lands of the estate; annual payments as specified in the mortgages had to be paid, or they became liable to foreclosure; these payments were small as compared to the value of the lands mortgaged, and the mortgage debts were scarcely more than half the value of the lands; the administratrix had procured an order of sale of the lands, and had, after exposing them twice to public sale, failed to get a bidder; the times and circumstances were unpropitious for a sale, and, under all the circumstances, we must hold that she did not act unwisely in renting the lands and devoting the rents received to relief of the lands under mortgage. Certainly, the creditors have shown nothing in her having done so, of which they can complain.

4. It is too clear for consideration, that the debts contracted by the widow in her own name for family supplies, after the date of the death of her husband and her own appointment as his administratrix, were not proper charges against his estate in her favor on settlement of his insolvent estate by her. *Wright v. Wright*, 64 Ala. 88. Nor was the $3.75, costs paid by her to a justice of the peace, in an attachment suit against a tenant in the year 1891, a proper credit. The tenant settled by turning over to the administratrix all the property attached before judgment, which was not enough to pay all he owed. She compromised with him, without an order of court, and paid the costs, which was not a preferred claim.

5. The court properly charged the administratrix with the $50. rent for 1893, with which she failed to charge herself. She rented the land for $150., and gave her personal security to a merchant to advance to the tenant during the year. He failed to make enough to pay the rent and advances. The crops were first appropriated to pay the advances; and after this, there was not enough to pay the $150. rent to the estate, by $50. What the advances amounted to in money, and the

value of the crops raised, is not made known, but it is fairly inferable, the advances amounted to over $50. Section 2446 of the Code of 1876, provided, that administrators and executors might rent the lands of deceased at public auction, securing the payment of the rent by notes or bonds with two good and sufficient sureties; and, when the interest of the estate required it, they might rent them privately, reporting that fact to the probate court. By the same section, carried into the Code of 1886 as section 2102, it is not made the duty of an executor or administrator, in renting the lands of the estate, to require personal security, as under the former statute, and he may now rent them without demanding security for the rent. The modification of the statute was suggested by the changed condition of affairs. Otherwise it might be, that the lands could not be rented at all, if so, at very great sacrifice. Under the present statute, the personal representative is bound only to reasonable diligence and the exercise of fair judgment, in making rents. While, therefore, the executrix in the case before us, on the evidence submitted was *prima facie* liable for the $50. rent, she should be permitted to show that she acted judiciously, under the circumstances, for the best interest of the estate, and if so, she should not be charged with the failure to collect the $50.

It is unnecessary to consider the other assignments of error, as they are without merit.

These were cross appeals, and as will appear, from the errors pointed out, the case must be reversed on each appeal.

Reversed and remanded.