# Robinson *v.* Hirschfelder.

## *Action of Detinue.*

1. *Things not in being can not be sold.*—Things not in being can not be the subject of sale, but they may be of an agreement to sell.

2. *A contract to sell is not a sale, if anything remains to be done by the seller.*—A contract is only an agreement to sell, and does not become a sale if any term in which the seller must co-operate, or which imposes a liability or duty on him, remains to be performed.

3. *In a conflict between purchasers the jury must ascertain to whom delivery*

*was made.*—When there is a conflict between two purchasers as to whom the delivery of the property was first made, the jury must ascertain the fact according to the evidence; and the court can not assume, as a matter of law, that there had been a sale or delivery to either.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. P. O. HARPER.

Young S. Hirschfelder commenced an action of detinue in the Circuit Court of Escambia county, against A. J. Robinson, to recover one hundred sticks of hewn timber. The defendant pleaded the general issue.

The plaintiff introduced as evidence a written agreement made on the 27th day of July, 1871, with one J. Q. Hammons. In it the said Hammons contracted to deliver to the plaintiff, at Ferry Pass, near Milton, Florida, on or before the 15th day of November, 1871, "one hundred sticks of hewn, square timber, to average eighty cubic feet, and to class A2 or B1 good, for which the plaintiff advanced to Hammons three hundred dollars, about one-third" of the estimated value of the timber at the price agreed upon.

Plaintiff also introduced evidence tending to show that Hammons went to work under the said contract, and frequently declared that the timber was for the plaintiff, who, during the progress of the work furnished Hammons, under said contract, goods and merchandise, amounting in value to about six hundred and eleven 79-100 dollars.

There was evidence that while the timber was unfurnished Hammons told the plaintiff he could not perform the contract, but that he would deliver him the timber he had. All of it was in Conecuh county; "some of it near Conecuh river, and the rest was in the woods." The plaintiff consented to receive the timber in the condition it was, and at the places it was lying, and sent a "man to mark it in his mark." He did so with the knowledge and consent of Hammons, who pointed out the timber.

The defendant proved that he had made a contract, on the 14th day of August, 1871, with Messrs. J. T. Chesser and J. Q. Hammons, in which they had agreed to deliver, on or before the 15th day of February, 1872, three hundred or more pieces of hewn or square timber to him, or "in his name to E. Whitmire, inspector of timber, at the head of Escambia Bay, or at Ferry Pass, Florida." By the contract, it was agreed that the timber should average one hundred feet, and class B1 good, A2.

There was evidence that Chesser and Hammons entered on the performance of their contract, and that the defendant

furnished them with provisions, and goods and merchandise, amounting in value to sixteen hundred and seventy-eight 24-100 dollars.

There was conflict in the testimony "as to how much of the timber taken by the sheriff under the writ of seizure was gotten out by Hammons before Chesser went to work with him, and whether, after that time, the timber gotten for Hirschfelder was kept separate from that gotten for Robinson." The timber was not obtained on the land either of Robinson, or Hirschfelder, or Hammons, or Chesser. There was contradictory evidence, also, "as to whether any of the provisions furnished by Robinson were used by Hammons, or Hammons and Chesser, while getting out the timber sued for. The defendant's evidence tended to show that while one hundred and fifty sticks of timber were lying in the woods and at the river, in Conecuh county, some finished and some unfinished, said Hammons, for Chesser and Hammons, sold and delivered the same to defendant, in consideration of the provisions advanced, and that defendant took possession of the same, which included that sued for, and was having it hauled to the river for rafting when this suit began."

The defendant requested the court to give the following charges, which were in writing:

"2. The written contract introduced by plaintiff would not of itself have the effect to vest in the plaintiff the legal title to timber gotten out by Hammons with the intention on his part of delivering it according to the contract, unless Hammons did something more than merely to get it out.

"3. Though you may believe that Hammons made the written contract introduced by the plaintiff, and afterwards went to work under said contract, and was supplied by Hirschfelder with provisions while he was getting out the timber; and though he did get out timber which, at the time he got it out, he intended to deliver to plaintiff, yet, if before he made any delivery to plaintiff, or did anything else besides the getting of it out to vest title in the plaintiff, he sold or conveyed it to the defendant, then the mere fact that Hammons had once intended the timber for plaintiff would not, if that be the only evidence of title in the plaintiff, enable the plaintiff to recover."

The court refused each of the foregoing charges, and to each refusal the defendant severally excepted.

HERBERT & BUELL, for appellant.—1. To charge three we

[Robinson v. Hirschfelder.]

invite particular attention, as it states clearly the point on which the case was made to turn. Bearing in mind that the timber was not being gotten out on Hirschfelder's land, we ask a construction of the written contract with Hirschfelder.

2. This contract is, on its face, merely an executory contract; that it would be satisfied by the delivery of any timber complying with the specifications, and that there is nothing whatever in the contract that would have made the loss fall on Hirschfelder if the timber had been accidentally destroyed before its completion, or delivery and acceptance. If this be so, then the two charges refused were not erroneous.

GAMBLE & BOLLING, for appellee.—1. The agreement between Hammons and Hirschfelder, if nothing more, is certainly a mortgage.—1 Hilliard on Mortgages, p. 2; 2 Ala. 555. But we insist this instrument is more than a mortgage, and coupled with the facts in the case, is an absolute sale. This may be denied, because it is said there was no delivery. A sale is valid between parties without a delivery when they so intend and so treat it.—43 Ala. 622; Benj. on Sales, 363, 78-4. And the testimony shows that while Hammons was getting the timber, he repeatedly declared it was Hirschfelder's, and that he proposed to deliver the timber to Hirschfelder in the woods, and that he consented to receive it, and sent a man to whom Hammons pointed out the timber, and it was marked in Hirschfelder's mark.—Authorities, *supra.*

STONE, J.—Things not *in esse,* actual or potential, can not be the subject of sale. They may be the subject of an agreement to sell. " Things not yet existing, which may be sold, are those which are said to have a potential existence, that is, things which are the natural product or expected increase of something already belonging to the vendor." The crop of hay to be grown on his field, the wool to be afterwards clipped from sheep owned at the time, have a potential existence, and may be sold. But a crop to be grown on lands, or wool to be clipped from sheep afterwards to be acquired, have not a potential existence, and can only be the subject of an agreement to sell.—Benjamin on Sales, 63. The title may pass by the one, it does not by the other.

A contract is only an agreement to sell, and does not become a sale, if any term in which the seller must co-operate, or which imposes a liability or duty on him, remains to

[Robinson v. Hirschfelder.]

be performed; such as weighing, measuring, inspecting, and,. we may add, transporting the goods to another place, to be there delivered and received.   Title does not pass by these executory agreements.— *Carraway v. Wallace,* 2 Ala. 542; *Batre v. Simpson,* 4 Ala. 305; *Browning v. Hamilton,* 42 Ala. 484; *Magee v. Billingslea,* 3 Ala. 679; *Kelly v. Upton,* 5 Duer, 336.

The written contracts with Hirschfelder and with Robinson, neither of them, vested title in the purchaser.   They were but agreements to sell that which, at the time, had no potential existence;   and a term of the contract—actual delivery at Ferry Pass—remained to be performed by the seller.   Detinue could not be maintained on either of these written contracts, without more. ·

But if the testimony be believed, each of these parties made a subsequent, modified agreement, by which they agreed to receive, and did receive possession of the timber as it lay in the woods.   Parting with dominion to another is delivery of a chattel; and if Hammons agreed to sell presently, and pointed out to the agent of the vendee the timbers in their then state, with a view of surrendering the dominion, and such agent thereupon took control of them, this amounted to a completed sale, notwithstanding the price to be allowed may have been left dependent on some after event.   The question is, did Hammons part with dominion over the timber?

The bill of exceptions informs us that there was a conflict in the testimony, as to which delivery was first; that to Hirschfelder, or that to Robinson.   This is the turning question in the cause, if sale and delivery was made to each. *Qui prior est in tempore, potior est in jure.*   In other words, if Hammons sold and delivered to one, he had nothing left to sell or deliver to the other.   The testimony on these questions was given orally to the jury.   It was for them to determine what were the facts.   They were the sole judges of the credibility and weight of the testimony.   The court could not find or assume, as matter of law, that there had been a sale or delivery to either.   Possibly the jury may have disbelieved that part of the testimony which tends to show a modification of the contracts.   This was for them to decide under the solemnity of their oaths.   Charge number 2, asked by the defendant, should have been given, because the court could not, as a matter of law, affirm the truth of the oral testimony.   That out of the way, the written contract did not justify a recovery.   But if the jury believed

the oral testimony as to the modified agreement, then plaintiff made out a *prima facie* case.—*Abraham v. Carter*, 53 Ala. 8.

The charge No: 3, asked by defendant, should also have been given. It was for the jury to determine which contract was first consummated by delivery.

Reversed and remanded.