W. C. THOMAS, Respondent, v. G. C. RAMSEY, Appellant.

Kansas City Court of Appeals, April 27, and December 7, 1891.

1. **Conversion:** FRAUDULENT CONVEYANCES : BRANDING OF RAILROAD TIES : POSSESSION : INSTRUCTION : PURCHASER. In an action for conversion, an instruction telling the jury that, if the ties ( admittedly made by a third person, under whom both plaintiff and defendant claimed ) had been branded with plaintiff's brand, etc., and defendant took said ties, etc., he was guilty of conversion, is disapproved, as it ignores the question of plaintiff's possession as required by the statute relating to fraudulent conveyances. The purchaser of railroad ties must, in addition to spotting them, take possession in a reasonable time, and notoriously continue the same, to acquire a good title against subsequent purchasers in good faith.

2. **Pleading:** GENERAL DENIAL : FRAUD AS A DEFENSE. Under a general denial, the defendant can offer in evidence anything that tends to show that, at the institution of the action, plaintiff had no title to the matter in controversy, or right to his alleged cause of action, as fraud in the acquisition of plaintiff's title, or that ownership was in a third person, or that the alleged cause of action never existed.

3. **Instruction:** ASSUMING A FACT. An instruction should not assume a fact about which there is no evidence.

4. ——— : EVIDENCE TO SUPPORT : INTENTION TO DELIVER FOR JURY. An instruction should have evidence to support it, and in this case an instruction, informing the jury that certain facts therein detailed constituted a delivery and transfer of title to certain ties, is *held* to be without evidence to support it. *Held,* also, that the most the evidence would permit, if that, would be a submission to

Thomas v. Ramsey.

the jury of the question, whether certain negotiations and acts of plaintiff and one Walls (the common source of title) showed an intention on the part of Walls to deliver possession of the ties in the woods, and of the plaintiff to receive them there instead, as provided in the original contract.

5. **Sales**: TWO VENDEES : POSSESSION. A contract is only an agreement to sell. and does not become a sale as long as anything remains to be done. as inspection, transportation, delivery or reception. So, where the same chattels are sold to two different persons by conveyances equally valid, he who first lawfully acquires the possession will hold it against the other.

*Appeal from the Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*Silver & Brown,* for appellant.

(1) Instruction, numbered 3, given for plaintiff was erroneous. *First.* Mere spotting the ties was not sufficient to pass the title thereto between Walls and plaintiff, nor to vest the property in the latter as against Ramsey. *Nicholson v. Golden,* 27 Mo. App. 132, 153; *Stewart v. Nelson,* 79 Mo. 524; *Grant v. United States,* 7 Wallace, 331. *Second.* Said instruction ignores plaintiff's own evidence, that, by the contract between him and Walls, the ties were to be delivered at the mouth of the Osage river, and hence the title did not pass as between plaintiff and Walls until they were so delivered there. Authorities, *supra; The Venus,* 8 Cranch, 253, 275. Instructions should not ignore material issues raised in the case by the evidence, or be based on a partial view of the evidence. *Beauchamp v. Higgins,* 20 Mo. App. 514. (2) Instruction, numbered 5, for plaintiff should not have been given. *First.* It assumes that the sale from Walls to defendant Ramsey was a pretended one, although there is no evidence to support the assumption. *Dowling v. Allen,* 86 Mo. 293. *Second.* The instruction is wrong in imputing a

pretended sale, *i. e.*, bad faith, or fraud, to defendant. *Beauchamp v. Higgins, supra. Third.* The instruction is also erroneous in making the mere branding or spotting of the ties sufficient to pass the title from Walls to plaintiff, and as against Ramsey. See authorities under point 1, *supra.* ( 3 ) Instruction, numbered 6, given for plaintiff was also erroneous. *First.* Plaintiff's own testimony given on the trial, as well as that of his agent, showed that the ties, by the contract of sale with Walls, were to be delivered at the mouth of the Osage river, subject to railroad inspection. The instruction is erroneous in authorizing the jury to find the delivery to have occurred at the time of the spotting in the woods and up the river. A party is as much estopped by giving a matter in evidence as by pleading it. *Speck v. Riggin*, 40 Mo. 406 ; *Shirts v. Overjohn*, 60 Mo. 308 ; *State v. Brooks*, 99 Mo. 137. *Second.* The instruction is vicious in ignoring the intention of the parties on the question of passing title; this was a question of fact for the jury. *Ober v. Carson*, 62 Mo. 209, 214 ; *Holley v. Railroad*, 34 Mo. App. 202. *Third.* The instruction ignores the fact that, by the contract between plaintiff and Walls, the ties were to be delivered at the mouth of the Osage river, subject to inspection, and the title therefor did not pass until such delivery and acceptance after inspection. See authorites point 1, *supra; Pierson v. Hoag*, 47 Barb. 243 ; *The Elger Cotton Cases*, 22 Wallace, 180 ; *Sneather v. Grubbs*, 88 Pa. St. 147 ; *Suit v. Woodhall*, 113 Mass. 391 ; *Stephen v. Santee*, 49 N. Y. 35. The general rule is that, where any operation, as surveying, counting or the like, remains to be performed, in order to ascertain the price or the quantity or the parcel to be delivered, the contract is incomplete, and the title does not pass. *Mason v. Thompson*, 18 Pick. 305 ; *United Soc. v. Brooks*, 145 Mass. 410, 416. ( 4 ) Instruction, numbered 4, refused by the court stated the law properly. 1 Chitty on Contracts [ 11 Am. Ed.] 536; *Bay v.*

*Cook*, 31 Ill. 336 ; *Packard v. West*, 4 Gray,. 307 ; *Lanfear v. Sumner*, 17 Mass. 113 ; *Veazie v. Somerly*, 5 Allen, 280 ; *Crawford v. Formstall*, 58 N. H. 114 ; *Robinson v. Hirschfield*, 59 Ala. 5031. The evidence tends to show that defendant's contract with Walls for ties was prior in point of time to plaintiff's.

*Edwards & Davison*, for respondent.

(1) The delivery in this case, if necessary to make the title to plaintiff, was sufficient. *Nance v. Metcalf*, 19 Mo. App. 183, 189 ; *Augeor v. Walsh*, 24 Mo. App. 134. We take this position, that, when plaintiff advanced this money to Walls and Walls made the ties, notified plaintiff of the fact, and plaintiff's agent and Walls counted, marked and branded the same, that the title to said plaintiff became complete as between them and any other person, with notice, and that plaintiff could have maintained replevin for the same, had not they been converted and removed by defendant, and then for damages for the value of the property. (2) Defendant relies on the statute of frauds also to defeat the action. We answer this objection: *First*. That to avail himself of this defense it should have been pleaded. *Gordon v. Madden*, 82 Mo., 193, and authorities there cited. *Second*. If defendant relied on this point and did not plead it, he should have called the attention of the trial court to it in some way, to advise it that he was relying on the statute as a defense. *Scharff v. Kline*, 29 Mo. App. 459 ; *Allen v. Richard*, 83 Mo. 55, 60 ; *Rabschab v. Lack*, 35 Mo. 316 ; *Yeoman v. Mueller*, 33 Mo. App. 343, 347. *Third*. This statute is designed to prevent the vendor from remaining in the apparent possession of personal property and thereby getting credit on it and defraud creditors. *Wesley v. Stanley*, 22 Mo. App. 546, 552 ; *How v. Taylor*, 52 Mo. 397-8. There is no pretense that there was any fraud in the transfer to Thomas. The ties were in fact always the property of plaintiff from the time they were made.

SMITH, P. J.—The plaintiff brought suit against the defendant in the Cole county circuit court, alleging in his petition that. on March 19, 1888, he was the owner of and in the possession of nine hundred and sixty-two. railroad ties on the banks of the Osage river and in the woods in Cole county, of the value of $250, which the defendant afterwards, on the twenty-ninth of March, 1888, wrongfully, forcibly and without the knowledge or permission of plaintiff took, carried away and converted to his own use, etc.   The answer was a general denial.   At the trial, the plaintiff, to maintain the issue in his behalf,. testified that, in February, 1888, he furnished one Walls $200, for which, under an agreement then made with him, he was to make and deliver to plaintiff railway ties ; that he was to pay Walls for the ties twenty-nine cents and culls nine cents in the water ; that the ties were to stand inspection on the bank of the tiver at the mouth, after they were delivered ; that he had no contract with Walls for any specified number of ties ; that he told defendant that Walls was getting out ties for him ; that his tie brand was a green spot which defendant knew ; that defendant got the ties which Walls made and which numbered about one thousand. O. S. Thomas, a witness for plaintiff, testified that Walls got $200 of his brother, the plaintiff, to buy timber with ; that Walls was slow in getting out ties so that he got after him about it ; that Walls wanted him, the witness, to go with him to the woods and count and spot the ties to show that he was not trying to beat "us out of the money ;" that witness went with Walls to where the ties were in the woods, and there counted and spotted five hundred and fifty-three of them ; that there were also four hundred counted and spotted on the river bank ; that he placed the plaintiff's brand on them ; that Walls then said : " I will turn these ties over to you as yours ;" the agreement between plaintiff and Walls was, that the ties were to be delivered at Osage

City, where they were to stand inspection; that witness did not give the ties any inspection.

The defendant Ramsey, to maintain the issue on his behalf, testified that, during the winter of 1887 and 1888, Walls came to him and wanted to put ties out on the river, and also wanted him to advance him some money; that he accordingly made advances of money to Walls; that, after he had made several advancements Walls told defendant he had ties enough out to pay the amount he owed him for money advanced; that Walls, under his contract with defendant, was to deliver the ties at Osage City; that, from January 1, 1888, to April 24, defendant had made Walls several advancements under his contract, amounting to $101; that, on the last-named day, he was coming down the river inspecting ties and looking after their delivery and found a bunch of Walls' ties with Thomas' brand on them; that there were three hundred and forty-nine good ties, and sixty-three culls; that he told Walls that he had found Thomas' brand on his ties, and that he wanted them delivered or there would be trouble about it; that Walls immediately rafted the ties to Osage City, and delivered them to defendant; that defendant then owed Walls $5 which he paid him; that in June, 1889, Walls told defendant that he had a bunch of ties in the woods at Schiender's, and that Schiender would haul them out; that Schiender hauled the ties out and Walls gave him for so doing an order on defendant for $57.90; that Walls afterwards delivered the ties to defendant, when he paid him $46.35 more, making $104.25 in full for that lot of ties.

James Walls testified that defendant made advances to him as long as he made ties on the first lot, made in the spring of 1888; the advances were made with the understanding that defendant was to have the ties and would pay for them in full when delivered at Osage City; that before the ties were delivered he made an agreement with plaintiff, whereby he was to advance all the money he needed in getting out ties and buying timber;

that, in the spring of 1888, after plaintiff had advanced him $200, S. Thomas came down and counted and spotted the ties he had in the woods and on the river bank ; that it was agreed that he was to deliver the ties at Osage City where they were to be inspected ; that he never delivered either lot of ties to plaintiff ; that the ties were never out of his possession until delivered to defendant; that he never delivered the ties to plaintiff or to anyone for him.   The evidence disclosed the further fact that plaintiff and defendant were both railway tie contractors doing business in buying and selling ties at Osage City and along the Osage river.

The court over the objections of the defendant gave, among others, the following instructions for plaintiff: "3.   If the jury believe from the evidence that the ties in question had been branded with the brand or mark of plaintiff and had upon them his initials, and that defendant himself, or by his agent or employes, cut out or marked over plaintiff's brand or mark and initials, or otherwise destroyed it and took the ties and shipped them away, or caused them to be taken and shipped away, such action amounts to a *wrongful and forcible taking away and conversion as charged in the petition.*"

"5.   If the jury believe from the evidence that, at the time of the pretended purchase of the ties in dispute by the defendant, the same had the mark or brand or spot or initials of the plaintiff on them, and the defendant saw or could have seen said mark or brand or spot and initials and that said defendant knew the mark, brand and spot and initials of plaintiff, then this was sufficient notice to defendant of the claim of plaintiff to said ties, and if he purchased and paid for said ties afterwards, he did so at his own risk and subject to the claim of plaintiff.

"6.   If the jury believe from the evidence that plaintiff employed the witness, J. W. Walls, to make or

get ties out for him, and in pursuance to said employ-ment, at the request of the said Walls, plaintiff advanced to him the sum of $200 on said employment, and there-upon said Walls got out for the plaintiff the ties men-tioned in the petition or any number of ties less than the number claimed in the petition, and that the same were the ties here in dispute, and notified plaintiff of the fact that he had gotton out the said ties, and there-upon plaintiff sent his agent and inspector to receive and take up said ties, and that said agent and inspector, in connection with said Walls, went over the ground where said ties were, took up and spotted said ties with the spot or brand of plaintiff and the same were received by the agent of plaintiff, then such acts on the part of said agent and the said Walls was sufficient to constitute a delivery to plaintiff and to transfer the title of said Walls in said ties to said plaintiff, subject to the claim of the said Walls for any unpaid balance due him on said ties."

The court refused a request by defendant for this amongst other instructions: " 4. If both plaintiff and defendant bought in good faith from Walls the ties in dispute, then the one first receiving possession from Walls is entitled to recover in this action."

The verdict and judgment was for the plaintiff, and from the latter the defendant has appealed.

I. The first ground on which defendant by his appeal assails the judgment is, that the plaintiff's third instruction, which in effect told the jury that the mere branding of the ties was sufficient to pass the title thereto between Walls and the plaintiff and to vest the property in the latter as against the defendant, is erroneous. The uncontradicted evidence shows that, by the contract between Walls and the plaintiff, the ties were to be delivered by the former to the latter at Osage City where they were to be subjected to inspection, until such delivery and inspection, the contract was not fully performed by Walls. Manifestly the ties until so

delivered and inspected would under the contract remain the property of Walls. *Grant v. United States*, 7 Wall. 331, *Nicholson v. Golden*, 27 Mo. App. 153. There is no pretense that the ties were ever delivered according to the provisions of the contract. The instruction under review declared the bare spotting of the ties by plaintiff, without anything more, operated as a transference of the title from Walls to him. The question then narrows itself down to whether the merely spotting the ties was sufficient to invest the plaintiff with such a title as would support the action of trespass *de bon asport*. The plaintiff must have had at the time of the trespass the actual or constructive possession of the goods, or at least a general, or special, property in them, and the right to the immediate possession. 1 Hilliard on Torts [3 Ed.] 578; *Hunn v. Tufts*, 6 Blackf. 136; *Connor v. Kenney*, 3 Scam. 9; *Edwards v. Edwards*, 11 Vt. 587; *Potter v. Washburn*, 13 Vt. 558; *Bower v. Calbaugh*, 11 N. H. 557; *Hoyt v. VanAlstyne*, 18 Barb. 568*a*. If the plaintiff had such possession or property in the ties within the requirement of the foregoing rule at the time of the alleged conversion by defendant, it was obtained solely by the spotting of the ties. This instruction virtually directed the jury that, if they found that the plaintiff had spotted the ties, that this was sufficient to establish his title.

*Stewart v. Bergstrom*, 79 Mo. 524, was where an attaching creditor levied his attachment on certain railroad ties as the property of two defendants. Bergstrom interpleaded, claiming the ties to be his property by virtue of a sale made by defendant prior to the attachment. The evidence showed that the interpleader had bought the ties, prior to the levy, of one of the defendants who were partners, but did not show that the actual possession of the ties had been delivered to the interpleader. It showed that after the sale the interpleader put a red dot on each of the ties, but it also showed that the ties were left in the possession of the

other partner the same as before the sale. Upon this state of facts the court declared that under the statute, Revised Statutes, section 2535, the vendee of personal property must take actual possession within a reasonable time, regard being had to the situation of the property, and be followed by actual and continued change of possession, and such possession must be open, notorious and unequivocal. It was further held that, as the undisputed evidence was that, as one of the partners remained in possession of the ties after the sale as he did before that, the interpleader was not entitled to recover.

It thus appears that in case of the sale and spotting of railroad ties that, unless the vendee takes actual possession within a reasonable time to be followed by an actual and continued change of possession, and such possession is open, notorious and unequivocal, that such sale and spotting is fraudulent and void as against the creditors of the vendor and subsequent purchasers in good faith. The instruction in question does not require the jury to find there was a sale from Walls to plaintiff but simply to find that "if the ties had been branded with the brand or mark of plaintiff and had upon them his initials" without reference to the question of possession, that this was sufficient to maintain his action against the defendant.

The undisputed evidence was further that the contracts entered into respectively by plaintiff and defendant with Walls were similar, but that of the defendant's antedated that of the plaintiff several months. Defendant had made advances of money to Walls, for which he was to make and deliver ties at Osage City. Defendant was a creditor of Walls, and under his contract was to receive the ties which the plaintiff spotted. Under such circumstances, it seems to us that it was essentially necessary, to authorize a recovery by plaintiff, for him to have shown not alone that he had spotted the ties, but that he had taken and continued that kind of

actual possession thereof, required by statute, as against the defendant, whose equities at the time of the conversion were, at least, equal to those of plaintiff, unless they had been cut off by a previous delivery of the actual possession by Walls to plaintiff.

But the plaintiff contends that, though the evidence may stamp the transaction between plaintiff and Walls fraudulent as to defendant, yet, as the defense of the fraud was not interposed by the answer, that this defense is not available to defendant for that reason.    It has been decided that, in the action of replevin, when the pleading on the part of the plaintiff is a general averment of the ownership of property and a consequent right of possession, any proof on the part of the defendant which goes to show that the plaintiff at the time of the institution of the suit was not the actual owner and was not entitled to the possession thereof, is admissible under the general issue, even though it extend to the proof of fraud in the acquisition of the plaintiff's title, or that the ownership and right of possession were in a third party. · *Young v. Glasscock*, 79 Mo. 577 ; *Besse v. Thomas*, 3 Mo. App. 472 ; *Schulenberg v. Harriman*, 21 Wall. 45 ; *Mather v. Hutchison*, 25 Wis. 27 ; *Caldwell v. Boggeman*, 4 Minn. 270 ; *Wheeler v. Billings*, 38 N. Y. 264.    Again, it has been held in this state that, under a general denial, evidence tending to show that the contract in issue and on trial was within the statute of frauds was admissible.    *Allen v. Richards*, 83 Mo. 55 ; *Springer v. Kleinsorge*, 83 Mo. 152.

But, while this is so, it seems that this defense cannot be raised by an instruction, unless the foundation is first laid by objections to the evidence.    *Scharf v. Klein*, 29 Mo. App. 549.

The cases last cited, with others referred to by counsel in their briefs, were where the defendant invoked in defense to the action the provision of the statute of frauds, Revised Statutes, sections 2513 to 2514 ; but it is not thought by us that the rule of practice, which

obtains in that class of cases as to objections to evidence and the giving and refusal of instructions, applies in cases where the defense, under the general denial, is based on fraud or is under the statute in relation to fraudulent conveyances.

In *Corby v. Weddle*, 57 Mo. 452, the defendant, who was sued on a promissory note, was permitted under the plea of *non est factum* to prove that his signature was procured by fraud. *White v. Middleworth*, decided by us at the last term, 42 Mo. App. 368, collates all the cases, and is in line with the case last cited. *Greenway v. James*, 34 Mo. 326, was an action of *de bonis asportatis* where the petition alleged and the answer denied the ownership of the property at the time of the alleged trespass. On the trial the defendant offered testimony to show that the sale from the plaintiff's vendor to him was colorable and fraudulent, as against the creditors of such vendee. This offer was rejected. The court in its opinion say, " when the cause of action never existed, the appropriate defense under the law is a denial of the material allegations of the petition, and such facts as tend to disprove the controverted allegations are pertinent to the issues. The rejected testimony, if true, disproved the plaintiff's ownership of the property, and showed thereby the cause of action alleged had never existed, and it was, therefore, improperly rejected." The ruling in *Northrup v. Ins. Co.*, 47 Mo. 435, has been several times approved and followed. *Hudson v. Railroad*, 101 Mo. 13 ; *Kersey v. Garton*, 77 Mo. 645. This ruling was to the effect that, whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out according to the statute in ordinary and concise language, else he will be precluded from giving evidence of it upon the trial, and that, by merely answering the allegation of plaintiff's petition, he can try only such questions of fact as

are necessary to sustain plaintiff's case. There was evidence introduced, the tendency of which was to show that Walls had not, prior to the time of the alleged conversion, delivered the actual possession of the ties to plaintiff; that he retained the possession after the spotting the same as before it; that the plaintiff was not the owner, in law and fact, of the ties, and was not entitled to the possession thereof. These facts went to show that the cause of action did not exist as against defendant at the time of the alleged conversion.

Again, this instruction being based only on a partial view of the evidence, it ignored the issues raised by the evidence in respect to the sale, delivery and change of the actual possession of the ties. It should not have been restricted in its hypothesis to the single fact of spotting the ties. It should have been more comprehensive as has already been sufficiently indicated, and for this reason was improper.

II. The defendant further complains that the plaintiff's fifth instruction was improper. It assumes that the purchase by defendant of the ties was a *pretended purchase*. There is nothing in the evidence that we can discover to justify this assumption of the court. The language of this instruction imputed bad faith and fraud to defendant. The reasons upon which the third instruction was condemned apply with equal force to this. It should not have been given.

III. The defendant has lodged a number of objections against the plaintiff's sixth instruction. We think it is specially obnoxious to the objection that it is not supported by the evidence. The plaintiff showed by the undisputed evidence that under his contract with Walls in consideration of the advancements made by him to Walls, the latter was to buy timber, get out ties, and deliver them to plaintiff at Osage City, where they were to be inspected. The contract provided for no delivery or inspection short of Osage City. The instruction under consideration was

based wholly upon the evidence of the witness, O. S. Thomas. He testified that, "Walls got $200 to buy timber with and he went to work and got out some ties; that he was slow about getting them out and I got after him about it and he wanted me to go with him to the woods and count the ties and spot them, to show that he was not trying to beat us out of the money; that I went with him to where these ties were in the woods, counted them and put my brother's mark on them; that Walls said 'I will turn these ties over to you as yours.'" There is not the slightest evidence of any change or modification of the original contract requiring the ties to be delivered and inspected at Osage City, nor that O. S. Thomas, the agent of plaintiff, had been in any way authorized by the plaintiff to assent to any change in said contract in respect to that matter. The plain inference to be deduced from the testimony just quoted is that, when complaint was made that Walls was slow in getting out the ties, that, for the purpose of showing plaintiff that he was executing the contract with diligence and in good faith, requested the plaintiff's brother to go with him to the woods and there count and spot the ties which he had made, telling him that, "I will turn these ties over to you as yours." When did he mean that he would turn the ties over to plaintiff as his? His meaning must be interpreted in view of the contract. We must infer that he meant that he would deliver the ties so counted and spotted to the plaintiff at Osage City. The evidence of the plaintiff's brother was not that Walls delivered the ties to plaintiff in the woods when counted and spotted by him. The language of Walls implied future action. This was consistent with his contractual obligation to plaintiff. In the light of subsequent events this was shown to have been the understanding at the time the ties were counted and spotted. The ties there on the bank were afterwards rafted to Osage City and there delivered by Walls to defendant in the presence of the plaintiff's

agent who made no claim to the ties or objection to the delivery of them to defendant. Not only this, but the ties in the woods remained there for more than a year afterwards, during which time the plaintiff is not shown to have made the slightest claim to them. Walls caused them to be hauled to the river bank, defendant paying at his request therefor, and there sold and delivered them to defendant.

Again, the question of transfer to and vesting the legal title in the purchaser always involves an inquiry into the intention of the contracting parties, and it is to be ascertained whether their negotiations and acts show an intention on the part of the seller to relinquish all further claim as owner and on the part of the buyer to assume such control with all liabilities. *Ober v. Carson*, 62 Mo. 209; *Hally v. Railroad*, 34 Mo. App. 202. And when the facts are doubtful or controverted, whether such was the intent of the parties, is the question for the jury. *Glass v. Gelvin*, 80 Mo. 297. Upon the principle stated in 62 Mo., *supra*, we think the question, whether the negotiations and acts of plaintiff and Walls showed an intention on the part of Walls to deliver the possession of the ties in the woods and of the plaintiff to receive them there instead of at Osage City as provided in the original contract, should have been embraced in and submitted to the jury by this instruction, if it was proper to give it at all, in view of the evidence which we have in this paragraph quoted.

IV. No reason is perceived why the defendant's fourth instruction should not have been given. 1 Chitty on Contracts [11 Am. Ed.] top page 536, it is stated that, "although, as between vendor and vendee and against strangers and trespassers, the title to property passes *by sale without delivery*, the same rule does not operate against subsequent purchasers, attaching creditors and others standing in like relation; to render a sale valid against these there must be a delivery of the property sold. Where, therefore, the same chattels

are sold to two different persons by conveyances equally valid, he who first lawfully acquires the possession will hold it against the other." *Robinson v. Hirschfield*, 59 Ala. 503; *Crawford v. Formstall*, 58 N. H. 114, recognize the above rule. The evidence shows that the respective contracts for the sale and delivery of the ties, with Walls by plaintiff and defendant, were alike except that, as has been already stated, that of the defendant was entered into several months before that of plaintiff. Each made advancements on their contracts. A contract is only an agreement to sell, and does not become a sale if any term in which the seller must co-operate, or which imposes a liability or duty on him, remains to be performed, such as inspecting and transporting goods to another place to be there delivered and received. Title does not pass by such executory agreements. *Connory v. Wallace*, 2 Ala. 542; *Kelley v. Upton*, 5 Deur. 336. When, therefore, the sale was to two persons by different contracts, he who first lawfully acquires the possession; will hold against the other. *Qui prior est in tempore, potior est in jure.* This instruction, we think, should have been given. It follows that the judgment will be reversed, and the cause remanded. All concur.