# Hamil, Adm., *v.* Flowers, *et al.*

## *Assumpsit.*

(Decided June 11, 1913.   Rehearing denied December 8, 1913.)
63 South. 994.)

1. *Sales; Subject Matter; In Esse.*—Things not in esse actual or potential, may be the subject of an agreement to sell but cannot be the subject of a sale.

2. *Same; Construction; Payment in Specific Articles.*—Where payment is to be made in specific articles, the articles must be actually tendered within or at the time specified, or where no time is specified, then within a reasonable time; otherwise, the debt becomes payable in cash.

3. *Same; Payment; Mode.*—All agreements to pay in specific articles are presumed to be made in favor of the debtor and he may always discharge his debt by payment in specie in place of the specified article.

4. *Sales; Breach; Action for Damages.*—Where the property in the thing agreed to be sold has not passed to the buyer under the terms of the contract, the remedy of the buyer for the seller's breach of such contract is an action for damages.

5. *Specific Performance; Executory Contract; Grounds.*—Where plaintiff's intestate aided the testator of defendants to organize a corporation with the understanding that one thirty-second of the capital stock of the corporation would be transferred to him when a sufficient amount of the net income as dividends had been distributed to stockholders to repay the amount they had subscribed to the capital stock in cash or its equivalent, and plaintiff's intestate died before the time when he would have been entitled to demand the stock, in an action to recover the dividend collected on such stock and withheld, the action for money had and received, while equitable in its nature is still an action at law, and cannot accomplish the purpose of a bill for specific performance of the contract to transfer the stock, or to pay over the dividend; plaintiff's remedy for the relief sought being in a court of equity exclusively.

6. *Contracts; Executory; Breach; Damages.*—Wherever equity will enforce the right to specifically perform an executory contract of sale, the law gives the party entitled thereto the right to sue for damages for the breach.

7. *Executors and Administrators; Assets; Choses in Action.*—The contract examined and held to be an executory contract—a chose in action—which passed to the administrator of decedent, and hence, an agreement by the heirs of decedent to accept a certain divided. or part of the net earnings of the corporation, and waiving the issue of stock under the agreement, was not binding on the administrator.

8. *Same; Claims Against the Estate; Failure to Present.*—The con-
tract between plaintiff's intestate and the testator of defendant ex-
amined and it is held that as no stock was in existence when such
contract was made, and as then there could be no contract of sale,
the only remedy of the administrator was an action for damages for
breach of the executory contract to transfer the stock, which would
be barred if not presented to the executor of defendant within a year
after the issue of letters as required by section 2590, Code 1907.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Assumpsit by H. F. Hamil, as amdinistrator of J. M.
Bivings, against E. P. Flowers and Brooks Flowers, in-
dividually and as trustees and executors of John J.
Flowers, deceased.   Judgment for defendants, and
plaintiff appeals.   Affirmed.

The agreement is set out in full, as are most of the
facts necessary to a proper understanding of the
opinion.

Plea 2 is as follows:   "Plaintiff ought not to have and
recover for that plaintiff's claim—the alleged demand
or claim sued for—arose upon and out of, and not
otherwise than, an agreement alleged to have been en-
tered into in the year 1898, between John J. Flowers,
now deceased, and J. M. Bivings, now deceased, where-
by the said Flowers agreed to sell to the said Bivings
1/32 of the capital stock of the corporation then being
organized, to be known and called the Flowers Lum-
ber Company, and to pay to the said Bivings the divi-
dend, or a part of the dividend, accruing thereon; that
no part of said stock was delivered, and no part of said
dividends accruing thereon were paid by the said Flow-
ers to the said Bivings or to plaintiff, and defendants
severally aver that at the time of the said alleged agree-
ment if such was made, the said 1/32 of the capital
stock of the proposed corporation had not been issued
or segregated or separated from the remainder of the
capital stock of the proposed corporation, and that no

[Hamil, Adm., v. Flowers, et al.]

part of said stock had ever been issued to or in the name of said Bivings. And defendants further severally aver that the said John J. Flowers died in the county of Montgomery, State of Alabama, in April, 1905, leaving a last will and testament, which was, during the year 1905, duly admitted to probate in the probate court of Butler county, Ala., wherein and whereby defendants, E. P. Flowers and Brooks Flowers, were nominated as two of the executors thereof, and were therein constituted and appointed as trustees, under certain trusts therein created, and were in the year 1905 duly appointed as two of the executors thereunder. And defendants further aver that they have not received any of the capital stock of said corporation, nor any of the dividends thereof, otherwise than under the provision of the will of the said John J. Flowers, and defendants further severally aver that no claim, either for the alleged 1/32 of the capital stock of the said Flowers Lumber Company, or any part thereof, nor for any claim to damages for and on account of any breach of the said alleged agreement between the said John J. Flowers and the said J. M. Bivings, or for any dividends accruing on said stock was ever at any time made or presented to the executors under the will of said Flowers, deceased, or to either of them, or filled in the probate court of Butler county, Ala., within the time and manner as required by law in such cases, wherefore defendants severally say that the alleged claim or demand of plaintiff is barred by the statute of nonclaim."

The third plea set up a payment of the demand sued on to the heirs of J. M. Bivings, deceased, before the commencement of the action, and before the appointment of plaintiff as administrator, and avers that there was no necessity for the appointment of an administrator. The replication sets up the agreement set out in

the opinion, and the facts stated in the opinion, and concludes that under these circumstances there is no necessity for demand or for a filing of the claim.

BALL & SAMFORD, for appellant. The plea confesses the complaint and seeks to avoid it on the sole ground of nonclaim, and if the statute does not require appellant's demand to be presented or filed, then the plea is fatally bad. This suit is for the dividend on the stock, and not for the stock itself. A cestui que trust does not have to file or present his claim to a personal representative to entitle him to recover the trust property at any time he may become entitled to it.—*Duval v. McClosky,* 1 Ala. 708; *Inge v. Boardman,* 2 Ala. 331; *Smith v. Gillam,* 80 Ala. 296; *Andrews v. Huckabee,* 30 Ala. 144; *Lock v. Palmer,* 26 Ala. 312; *George v. George,* 67 Ala. 192; *Flinn v. Barbour,* 61 Ala. 530; *Rhodes v. Hanna,* 66 Ala. 215. See also the following authorities.—22 Ark. 535; 9 Cal. 643; 85 Cal. 436; 110 Cal. 79; 19 Fla. 163; 16 Ill. App. 392. The suit is against defendant as trustee and not as executor, and there is no law requiring claims against trustees to be presented.

STEINER, CRUM & WEIL, for appellee. You cannot join a person in his representative capacity and in his fiduciary capacity with him in his individual capacity. —*Jeffords v. Ringold & Co.,* 6 Ala. 544; 23 Cyc. 433; *Gobbold v. Roberts,* 20 Ala. 354; 18 Cyc. 975. The court did not err in holding that the plea of the statute of nonclaims was good as to the suit against appellee as trustee.—*Smith v. Fellows,* 58 Ala. 471; *McDowell v. Jones,* 58 Ala. 25; *Jones v. Drewry,* 72 Ala. 311; *Farris v. Stoutz,* 78 Ala. 130; 45 Ark. 299. This is true of a cestui que trust who seeks redress, as a general creditor of the estate of the deceased fiduciary.—*Taylor v. Robinson,*

69 Ala. 296; *Rhodes v. Hanna,* 66 Ala. 215; 18 Cyc. 469.
Aside from all this, the suit is one in assumpsit for
money had and received against a trustee and such a
suit cannot be maintained.—*Vinson v. Rogers,* 30 Ala.
471; *Dailey v. Dailey,* 66 Ala. 266; *Smith v. Fellows,*
*supra; Lowery v. Daniel,* 98 Ala. 452; *Spottswood v.*
*Bentley,* 132 Ala. 266.

DE GRAFFENRIED, J.—We gather from the plead-
ings in this case that while the Flowers Lumber Com-
pany was in process of organization it was understood
that John J. Flowers, who is now dead, would be a large
owner of the capital stock, and that he would therefore
have a large influence in the management of the affairs
of the corporation. We also gather from the pleadings
that after the corporation was organized and when its
capital stock was actually issued, a large interest in
the stock was issued to John J. Flowers, and that said
John J. Flowers had much to do with the management.
of the affairs of the corporation up to the time of his
death, which occurred in 1905. We also gather from
the pleadings that while the process of organizing the
said corporation was in progress, John J. Flowers em-
ployed one J. M. Bivings to do certain work for the said
corporation with the understanding that when a suffi-
cient amount of the net income of the corporation had
been, in the shape of dividends, distributed to the stock-
holders of the corporation to repay them the amounts
which they had subscribed in cash or its equivalent to
such capital stock, then that the said John J. Flowers
would transfer and assign unto the said Bivings enough
of his stock in said corporation, in payment for said
work, as would be sufficient to make Bivings the owner
of an undivided 1/32 interest in the capital stock of
said corporation. Bivings died before the period ar-

rived when, under the terms of the agreement, he would have been entitled to demand the stock of said John J. Flowers, but after his death the period did arrive when, if he had been living, he would have been so entititled. This being the situation, John J. Flowers, so one of the replications to the pleas alleges, accepted the following proposition from three of the *heirs* of said Bivings: "You allow us to share in all net dividends declared by the Flowers Lumber Company at Jakin, Ga., after January 1, 1905, to the amount of 1/32 of said dividends, we to share in the dividends coming from the purchase or sale of all lands or timber, or the purchase or sale of all machinery, steels rails, etc. In other words, we to receive 1/32 of the net earnings of said business, this to be divided equally between we, the undersigned, and the heirs of Mrs. Mary E. Fry, deceased. We hereby waive the issuing of stock certificates to us and consent for you to hold same in your name and vote same at all meetings of stockholders. This proposition, if accepted, to be full and satisfactory settlement of all claims or demands to this date, December 31, 1904." This replication to the plea, after setting out the above proposition, alleges that the said Flowers, after accepting said proposition, paid to the heirs "the amount which he admitted he had collected as dividends on said stock; that said Flowers continued to hold said stock and pay to the heirs of said Bivings, until the time of his death the sums which he claimed to have collected as dividends thereon; that after the death of said Flowers, the trustees constituted by his will, continued to make said payments to said heirs until, to wit, 1907, when plaintiff filed his suit in Georgia for possession of said stock, whereupon said trustees, including the defendants, refused to pay to plain-

tiff the dividends thereafter collected by them upon said stock, and for which said suit was brought."

1. When John J. Flowers made the above contract with J. M. Bivings the Flowers Lumber Company had not been formed, and the contract related to stock which the parties expected to be issued in a corporation which was not *then* in existence. The true legal effect of the transaction was that John J. Flowers employed J. M. Bivings to do certain work, and agreed to pay him in full for that work by making to him a transfer, at the time we have above stated, of an undivided 1/32 interest in the capital stock of a corporation which was to be incorporated in the future. While the law does not make a contract for parties, it carefully looks into the contract which parties make. It does this for the purpose of ascertaining from the words used by them in making the contract what the *real* purpose of the parties was when they made the contract, and what *substantial thing* the parties agreed to when they made it. Having done this, the law then says what the contract actually was. The substance of the thing agreed upon is *the* thing to which the law looks when it is called upon to construe a contract, and is *the* thing which determines what the contract really is.—*Union Mut. Ins. Co. v. Wilkinson,* 13 Wall. 235, 20 L. Ed. 617. So construed, the true contract between Flowers and Bivings was as we have above stated it to be.

"Things not *in esse,* actual or potential, cannot be the subject of sale," but "they may be the subject of an agreement to sell."—*Robinson v. Hirschfelder,* 59 Ala. 503; 4 Mayf. Dig. p. 744, subd. 27.

"If, by agreement, *payment* is to be made in specific articles, they must be actually tendered *within* or *at the time specified,* or within a reasonable time if none specified; otherwise the debt becomes payable in *cash.*"

—Benjamin on Sales (7th Ed., Bennett's) p. 776, subd. 6.

"All agreements to *pay* in specific articles are *presumed* to be made in favor of the *debtor;* and he may, in all cases, pay the amount of the debt *in money,* in *lieu* of the articles, which, by the terms of the contract, the *creditor had agreed to receive."—Abner B. Roberts v. William Beatty,* 2 Pen. & W. 63, 21 Am. Dec. 410; *George G. Smith v. H. O. Coolidge,* 68 Vt. 516, 35 Atl. 432, 54 Am. St. Rep. 902.

2. An executory contract of sale of personal property is a chosen action, and upon the death of its owner passes to his legal representatives. When J. M. Bivings died the agreement which he had with John J. Flowers passed into the administrator of his estate. The agreement which the heirs of J. M. Bivings made with John J. Flowers and which we have above set out, was a matter with which the administrator of Bivings, in so far as the question now under consideration is concerned, certainly had nothing to do. *That* agreement was not binding upon the administrator and was, as between the heirs of Bivings, the said John J. Flowers and the said administrator of Bivings, an agreement which the said heirs and the said John J. Flowers had no power or right to make. The heirs of Bivings had in law no title whatsoever to this chose in action of the estate, and no right, as against the administrator, to compromise, settle, or adjust that claim. This claim of Bivings, as already stated, at the time of his death was an executory—not an executed—contract of sale, and the title to the claim vested in his administrator, just as the title to all the other personal property of Bivings which was subject to administration passed into the administrator.

"Where, by the terms of the contract, the property has not passed to the buyer *in the thing* which the vendor has agreed to sell, it is obvious that the buyer's remedy for the breach of the vendor's promise is the same as that which exists in all other cases of breach of contract. He may recover damages for the breach, but he has no *special* remedy growing out of the relations of *vendor* and *vendee.*"—1 Benj. on Sales, (7th Ed., Bennett's) p. 920, § 870.

3. Section 2590 of the Code of 1907 provides as follows: "All claims against the estate of a decedent, other than the claims referred to in the preceding section, must be presented within twelve months after the same have accrued, or within twelve months after the grant of letters testamentary or of administration; and if not presented within that time, they are forever barred, and the payment or allowance thereof is prohibited." The above was the law when the cause of action now under discussion arose. In the appellant's brief we find the following: "The decisive question in this case is whether the appellant's claim is barred by the statute of nonclaim. That proposition is asserted by appellees' plea numbered 2, and upheld by the rulings of the lower court. Appellant contends that it is not so barred." In another place in appellant's brief we find the following: "Apparently appellant has two separate and distinct claims or demands or rights of action against the appellees as *trustees*": First, for the shares of stock; and, second, for dividends thereon. This suit is for part of the latter, and not for the stock itself. From 1898 till Bivings died, John J. Flowers held 1/32 or 25 shares of $2,500 par value of said stock for said Bivings and with his consent. There *was* not, and could not have been, *a breach* of that *contract* by *failure* of Flowers to *transfer* the stock to Bivings before the latter's

death, because the stock was not yet paid for, and Bivings was not yet entitled to it. It nowhere appears that there was anyone legally authorized, after the death of said Bivings, to *demand* the stock until the appointment of appellant. It does not appear that he ever *demanded* the stock, or that its delivery was ever refused by appellees or their testator. Therefore we see no basis for a claim for damages for the *breach of the original contract*, and no such claim, if timely presented, could have been allowed against the Flowers estate." We have quoted extensively from appellant's brief and italicized certain portions of it for the purpose of fully explaining the attitude of appellant in this litigation. This suit was brought by appellant for the *dividends* on the stock in an attempt, we presume, to evade the operation of the above statute of nonclaim. We find nothing in the books which authorizes us, however, to adopt as the law of this state any portion of the above-quoted argument of appellant.

For the breach by the seller of such a contract as we now have under consideration the buyer may recover of the seller, as a general rule, only the market value of the property at the time and place fixed by the contract for the delivery, and, *in all such cases, damages only* are recoverable, *under the law,* for such breach.— Benjamin on Sales (7th Ed., Bennett's) p. 920, § 870. Certainly, as *no* stock was in existence when the contract in the instant case was made, in no sense could there have been an executed contract of sale when the contract *was* made, and when, under the terms of the contract, the *debt* which Flowers owed to Bivings, and which he had a right to discharge in stock, Flowers or his executors failed to pay that debt either in money or in stock, then the administrator of Bivings became entitled to his action of damages and was furnished by the

[Hamil, Adm., v. Flowers, et al.]

*law* with *no* other remedy. In our opinion, therefore, the only right which, *at law,* has ever resided in the administrator of Bivings is the right which the law gave to him to sue John J. Flowers, or, if dead, his legal representatives, for damages for the breach by Flowers of an executory contract. That right of action was subject to the bar of the statute of nonclaim under the provisions of the above-quoted section 2590 of the Code of 1907.

Plea 2, which is a plea of the statute of nonclaim, was filed to each count separately and severally. The appellant's various grounds of demurrer to this plea raised for our consideration one question *only* viz.: Whether, under the facts alleged in that plea, the appellant's demand against the estate of John J. Flowers, as the plea alleged that claim to be, was subject to the bar of the statute of nonclaim. In other words, the appellant's demurrer to said plea went to the merits of this controversy, and we have confined our discussion to the question presented by the demurrer.

4. In a certain limited class of cases an executory contract of sale of stock of a corporation may be *specifically enforced* by *bill in equity* filed for that purpose. In all such cases equity furnishes relief because the law cannot, by its action for damages for the breach of the contract—the *only* remedy *known to the law*—furnish to the injured party adequate relief. The instant case is an *action at law;* and, while an action for money had and received is an action which is equitable in its nature, it cannot be converted into a bill for the specific performance of a contract, or be made to furnish relief obtainable only in a court of equity upon a bill filed for the purpose of specifically enforcing a contract. Whenever equity furnishes to a party the right to specifically enforce an executory contract of sale, the law furnishes

to him the right to sue, if he elects so to do, for damages for a breach of that contract, the *inadequacy* and not the *entire absence* of a legal remedy being *the* ground upon which, in such cases, the jurisdiction of equity may be invoked. To hold, under the facts set up in plea 2, that a suit at law could not have been maintained by Bivings or his administrator against John J. Flowers for damages on account of the failure of John J. Flowers to perform his part of the contract, viz., to transfer and assign unto Bivings the stock in accordance with the agreement, would be to hold for naught all the learning in the books upon the subject which we have above discussed. If the appellant possesses a remedy whereby he can obtain the stock and the dividends on the stock, that remedy exists in a court of equity, and not in a court of law.

The judgment of the court below is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., who dissents.